1   COOLEY LLP
    BENJAMIN H. KLEINE (257225)
2   (bkleine@cooley.com)
    3 Embarcadero Center
3   20th Floor
    San Francisco, California 94111-4004
4   Telephone:      +1 415 693 2000
    Facsimile:      +1 415 693 2222
5
    ALEXANDER J. KASNER (310637)
6   (akasner@cooley.com)
    1299 Pennsylvania Avenue NW
7   Suite 700
    Washington, District of Columbia 20004-2400
8   Telephone:      +1 202 842 7800
    Facsimile:      +1 202 842 7899
9
    RONAN A. NELSON (346553)
10  (rnelson@cooley.com)
    10265 Science Center Drive
11  San Diego, CA 92121-1117
    Telephone:      +1 858 550 6000
12  Facsimile:      +1 858 550 6420
13
    Attorneys for Third-Party
14  WIKIMEDIA FOUNDATION, INC.
15                          UNITED STATES DISTRICT COURT
16                        NORTHERN DISTRICT OF CALIFORNIA
17
18  J. A. CASTRO,                              Case No. 3:23-mc-80198-TSH
19             Plaintiff,
                                               **THIRD-PARTY WIKIMEDIA
20       v.                                    FOUNDATION, INC.'S OPPOSITION
                                               TO PLAINTIFF'S MOTION TO
21  JOHN DOE 1 a/k/a CHETSFORD,                COMPEL**
22             Defendant.                      Judge: Magistrate Judge Thomas S. Hixson
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.      Wikimedia and Wikipedia Promote Free Online Knowledge Projects, Edited by Users Who May Choose to Remain Anonymous ................... 2

    B.      Plaintiff J.A. Castro Files Baseless Lawsuit (for an Improper Purpose) Against Four John Does for Defamation Per Se .................................... 2

    C.      Plaintiff Serves a Subpoena to Deanonymize Chetsford ...................... 5

    D.      IP Addresses Can Be Correlated with User Identity.............................. 6

III.    ARGUMENT ...................................................................................................... 7

    A.      Chetsford's Anonymous Wikipedia Edits Are Constitutionally Protected Speech ................................................................................................... 7

    B.      Under Established First Amendment Law, Plaintiff Must Show He Has a Viable Claim, Supported by Evidence, Before He Can Take Discovery Regarding Chetsford's Identity ............................................................ 8

    C.      Plaintiff's Subpoena Is Unenforceable, as Plaintiff Has No Viable Claim........... 10

        1.      Plaintiff Does Not Even Properly Plead a Defamation Claim, Let Alone a Defamation Per Se Claim ........................................ 10

        2.      Castro Fails to Allege Actual Malice or Demonstrate Evidence of Negligence........................................................................... 12

            (1)      Castro Is a Public Figure.................................................. 12

            (2)      Castro Fails to Allege Actual Malice ............................... 13

    D.      The Balance of Interests Weighs Decidedly in Chetsford's and Wikimedia's Favor............................................................................. 14

IV.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011)............................................................... 7, 9

*Awtry v. Glassdoor, Inc.*,
    No. 16-mc-80028-JCS, 2016 WL 1275566 (N.D. Cal. Apr. 1, 2016) ............................. 10, 14

*Balla v. Hall*,
    59 Cal. App. 5th 652 (Cal. Ct. App. 2021) ........................................................... 12

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002)................................................................... 13

*Catalfo v. Jensen*,
    657 F. Supp. 463 (D.N.H. 1987) ............................................................. 11

*Collins v. Does 1-34*,
    No. 12-cv-1474-WQH-DHB (S.D. Cal. Jul. 25, 2012)........................................... 6

*Columbia Ins. Co. v. Seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999) ............................................................ 9

*Craigslist, Inc. v. 3Taps Inc.*,
    942 F. Supp 2d 962 (N.D. Cal. 2013) ....................................................... 6

*Crittendon v. Muldrow*,
    No. 22-cv-09153-RS, 2023 WL 2743582 (N.D. Cal. Mar. 31, 2023) ................................. 11

*Deuss v. Siso*,
    No. 14-cv-00710-YGR (JSC), 2014 WL 4275715 (N.D. Cal. Aug. 29, 2014) ...................... 5

*Doe v. 2TheMart.com Inc.*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001)..................................................... 7

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
    608 F. Supp. 3d 868 (N.D. Cal. 2022) ................................................... 7, 8, 9, 10

*Freedom Newspapers of Tex. v. Cantu*,
    168 S.W.3d 847 (Tex. 2005).................................................................. 13

*Gallagher v. Philipps*,
    563 F. Supp. 3d 1048 (S.D. Cal. 2021) ...................................................... 10

*In re Grand Jury Subpoena*,
    875 F.3d 1179 (9th Cir. 2017).................................................................. 8

*Highfields Cap. Mgmt. L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) .................................................. 8, 9, 11

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2

**Page(s)**

3

*Hoffman v. Cap. Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001) ............................................................................. 13

4

5

*Io Grp., Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) ................................................................. 6

6

7

*Iola Barker v. Hurst*,
   No. 01-17-00838-CV, 2018 WL 3059795 (Tex. Ct. App. June 21, 2018) ............ 11

8

*Issa v. Applegate*,
   31 Cal. App. 5th 689 (Cal. Ct. App. 2019) ............................................................ 8

9

10

*Jackson v. Dallas Indep. Sch. Dist.*,
   No. CIV. A.398-CV-1079, 1998 WL 386158 (N.D. Tex. July 2, 1998) ............... 10

11

*Krinsky v. Doe 6*,
   159 Cal. App. 4th 1154 (Cal Ct. App. 2008) ...................................................... 7, 9

12

13

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ..................................................................................... 1, 7, 8

14

15

*Mick Haig Prods., e.K. v. Does*,
   No. 10-CV-1900-N, 2011 WL 5104095 (N.D. Tex. Sept. 9, 2011) ...................... 5

16

*Music Grp. Macao Com.Offshore Ltd. v. Does*,
   82 F. Supp. 3d 979 (N.D. Cal. 2015) .................................................................. 10

17

18

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................................... 13

19

20

*Nguyen v. Hoang*,
   No. H-17-2060, 2020 WL 12579765 (S.D. Tex. Aug. 10, 2020) ........................ 10

21

*O'Grady v. Twentieth Century Fox Film Corp.*,
   No. 02 CV 173, 2003 WL 24174616 (E.D. Tex. Dec. 19, 2003) ........................ 13

22

23

*O'Rourke v. Warren*,
   No. 03-22-00416-CV, 2023 WL 3914278 (Tex. App. June 9, 2023) ................... 11

24

25

*Rodriguez v. Gonzales*,
   566 S.W.3d 844 (Tex. App. 2018) ...................................................................... 12

26

*Roe v. Patterson*,
   No. 19-CV-179-SDJ, 2023 WL 2787956 (E.D. Tex. Apr. 4, 2023) .................... 10

27

28

-iii-

**WIKIMEDIA'S OPPOSITION TO MOTION TO
COMPEL 3:23-MC-80198-TSH**

1

2

**TABLE OF AUTHORITIES**
**CONTINUED**

**Page(s)**

3

4

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23,*
   *2020,*
   337 F.R.D. 639 (N.D. Cal. 2020) ................................................................. *passim*

5

6

*Schuster v. Mun. Ct.,*
   109 Cal. App. 3d 887 (Cal. Ct. App. 1980) ........................................................... 7

7

*Shahid Buttar for Congress Comm. v. Hearst Commc'n., Inc.,*
   No. 21-cv-05566-EMC, 2023 WL 2065044 (N.D. Cal. Feb. 16, 2023) ................ 12

8

9

*Shaunfield v. Experian Info. Sols., Inc.,*
   No. 12-CV-4686-M (BH), 2013 WL 12354439 (N.D. Tex. Dec. 20, 2013) ......... 14

10

11

*St. Amant v. Thompson,*
   390 U.S. 727 (1968) ............................................................................................. 12

12

*Trotter v. Jack Anderson Enters.,*
   818 F.2d 431 (5th Cir. 1987) ................................................................................ 12

13

14

*Tull v. Higgins,*
   No. 21-cv-01566-DMR, 2021 WL 6116971 (N.D. Cal. Dec. 27, 2021) .............. 14

15

16

*Turner v. KTRK Television, Inc.,*
   38 S.W.3d 103 (Tex. 2000) ................................................................................... 12

17

*USA v. Vortman,*
   No. 16-cr-00210-TEH-1, 2017 WL 1493100 (N.D. Cal. Apr. 26, 2017) ............... 6

18

19

*Veolia Transp. Servs., Inc. v. Evanson,*
   No. 10-01392-PHX-NVW, 2011 WL 5909917 (D. Ariz. Nov. 28, 2011) .............. 6

20

*Vogel v. Felice,*
   127 Cal. App. 4th 1006 (Cal. Ct. App. 2005) ...................................................... 10

21

22

*Wynn v. Chanos,*
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................................. 13

23

24

*ZL Techs., Inc. v. Does 1-7,*
   13 Cal. App. 5th 603 (Cal. Ct. App. 2017) ............................................................ 7

25

**Other Authorities**

26

California Constitution Article I § 2 ................................................................................ 7

27

28

**TABLE OF AUTHORITIES**
**CONTINUED**

**Page(s)**

Federal Rule of Civil Procedure
  8 ................................................................................................................ 9, 11
  12(b)(6) ............................................................................................................. 9
  26(d)(1) ............................................................................................................. 5
  26(f) ............................................................................................................... 5, 6

## I.   INTRODUCTION

Enforcement of this Subpoena would be an affront not only to the rights of the Wikimedia Foundation and its users, but also to the First Amendment and the public discourse that is so crucial to a thriving democracy.  Plaintiff, John Anthony Castro, is a candidate for U.S. President in the 2024 federal election, but he does not like what a Wikipedia user contributed about him on the Wikipedia page about him, and he seeks to identify the user through this subpoena.  But his claim that there has been any defamation is wholly unsupported by any specific allegation, let alone by concrete evidence that would be needed to support his request to deanonymize the user.

Castro's underlying complaint filed in the Northern District of Texas brings a defamation claim against four Doe defendants, including "John Doe 1," the Wikipedia user in question who goes by the Wikipedia username "Chetsford."  Castro asserts that Chetsford worked in concert with the three other Doe defendants to defame him.  But the complaint—just like Castro's motion to compel—contains absolutely no detail on what statements were allegedly defamatory, other than a single word: "sleazy," which is by its nature opinion, not a factual assertion.   Castro offers no specific allegations in support of his claim—no indication of what the precise statements at issue are, why they are false, how they were made with any fault (let alone actual malice).  Yet on the back of these threadbare allegations, Castro has issued the Subpoena to non-party the Wikimedia Foundation, Inc., the non-profit corporation that hosts Wikipedia, demanding that Wikimedia turn over a list of Chetsford's IP address(es) for a 12-month period.

Under well-established law, Castro's Motion to Compel ("Motion") must be denied.  Not only has Castro failed to identify specific statements constituting the alleged defamation, but Chetsford's edits to the Castro Wikipedia page are constitutionally protected speech, as is his right to speak anonymously.  It has long been established that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995).  Accordingly, the law requires that Castro set forth a *prime facie* case, backed by competent evidence pre-discovery, as to every element of his claim (here, defamation *per se*).  Castro's Motion fails to clear that bar, or even the lower basic pleading

standard: he fails at the threshold to even identify the statements at issue or why they are false.  Nor does Castro provide anything beyond mere conclusory assertions of fault and actual malice.

Because Castro's subpoena threatens the core First Amendment rights of Wikipedia users to remain anonymous online, and because Castro has failed to plead, let alone provide any evidence to support his (plainly deficient) defamation suit, the Court should deny the Motion and hold the Subpoena unenforceable.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Wikimedia and Wikipedia Promote Free Online Knowledge Projects, Edited by Users Who May Choose to Remain Anonymous

The Wikimedia Foundation, Inc. ("Wikimedia") is a 501(c)(3) nonprofit charitable organization headquartered in San Francisco, California.  (Declaration of Joe Sutherland (hereinafter, "Sutherland Decl.") ¶ 3.)  Wikimedia hosts over a dozen free knowledge projects, including Wikipedia, the world's largest and most popular encyclopedia.  (*Id.* ¶ 4.)

Wikipedia is a web-based, free-content encyclopedia that contains more than sixty-one (61) million (61,000,000) volunteer-authored articles in nearly three hundred (300) languages.  (*Id.* ¶ 5.) It is written, edited, and curated collaboratively by largely anonymous or pseudonymous Internet volunteers who do so without pay.  (*Id.*)  Except in limited cases where editing is restricted to prevent disruption or vandalism to articles, anyone with Internet access can create, write, or make changes to Wikipedia articles.  (*Id.* ¶ 9.)

Users can contribute anonymously, under a pseudonym, or, if they choose to, with their real identity.  (*Id.* ¶ 7.)  Wikipedia makes this clear to its editors: "We believe that you shouldn't have to provide nonpublic Personal Information to participate in the free knowledge movement.  You do not have to provide things like your real name, address, or date of birth to sign up for a standard account or contribute content to the Wikimedia Sites."  (*Id.* ¶ 8.)

### B.    Plaintiff J.A. Castro Files Baseless Lawsuit (for an Improper Purpose) Against Four John Does for Defamation *Per Se*

Plaintiff John Anthony "J.A." Castro, a Texas resident, is the founder and managing partner of the tax law firm Castro & Co., LLC.  (Declaration of Benjamin H. Kleine (hereinafter, "Kleine

Decl.") Ex. A ("Compl.") ¶ 7; *see also* Kleine Decl. Ex. E ("Georgetown Compl.") ¶ 8.)  Castro has a decades-long track record of seeking political office. In 2004, he unsuccessfully sought the Democratic nomination for Webb County Court of Commissioners. (Kleine Decl. Ex. F.)  In 2020, Castro unsuccessfully sought the Republican nomination for U.S. Senator from Texas.  (Kleine Decl. Ex. G.)   In 2021, he ran as a Republican in the special election for Texas's Sixth Congressional District in the U.S. House of Representatives.  (Kleine Decl. Ex. H.)  Castro is currently seeking the Republican Party's nomination for President of the United States in the 2024 general election. (Kleine Decl. Ex. I.)[1]

Castro holds a Master of Laws in Taxation from Georgetown Law School (Compl. ¶ 13) as well as a J.D. from University of New Mexico School of Law (Kleine Decl. Ex. K).  Although Castro has admitted he "is not licensed with *any* state bar" (Kleine Decl. Ex. Q), his Presidential campaign website notes that he "graduated from Georgetown Law" and "founded his own law firm." (Kleine Decl. Ex. L.)  Castro's law firm bio notes that, "[t]he general public does not know the difference between a state-licensed attorney that practices state law and the exemption for federal attorneys such as federal tax attorneys and patent attorneys that do not practice state law." (Kleine Decl. Ex. K.)

In 2018, Castro brought a suit against Georgetown Law after it banned Castro's law firm from Georgetown Law's career fair. (*See* Georgetown Compl.)  The ban traced back to Georgetown Law's determination that Castro had made misrepresentations in his resume when he was an LL.M. student. (*Id.* ¶¶ 11-20.)  Namely, Georgetown Law determined that statements on Castro's resume regarding his "West Point attendance and service" were misleading.  (*Id.*)   According to Georgetown Law, Castro was in fact conditionally accepted to attend West Point, subject to an initial year at the United States Military Academy Preparatory School (then located in Fort Monmouth, New Jersey).  (*Id.*)  He attended Preparatory School for one year before withdrawing; Castro alleged he nevertheless received an "Honorabl[e] Discharge as indicated on his DD-214."

[1] Castro's candidacy for the 2024 presidential election, combined with his several lawsuits against former President Donald Trump, attracted media attention and features in news outlets.  Examples of those news stories are attached, at Kleine Decl. Ex. J.

1    (*Id.* ¶ 14.)   Judge Barbara Lynn of the U.S. District Court for the Northern District of Texas

2    dismissed Castro's lawsuit against Georgetown Law for lack of jurisdiction.  (Kleine Decl. Ex. M.)

3    Several publications reported on the lawsuit and its dismissal, including the *ABA Journal*.  (Kleine

4    Decl. Ex. N.)

5         On June 16, 2023, Castro filed the underlying lawsuit at issue here, again in the Northern

6    District of Texas.  In a complaint styled as a "Verified Complaint" (though it is in fact lacking any

7    such verification), Castro asserts a single claim of defamation *per se* against four John Does.  Castro

8    alleges that John Doe 3 and John Doe 4 "hired Defendant John Doe 1," a Wikipedia user with the

9    pseudonym "Chetsford," "to create a Wikipedia page for Plaintiff for the sole purpose of defaming

10   Plaintiff and damaging his reputation."  (Compl. ¶ 10.)  They were allegedly assisted by "John Doe

11   2," a "tax attorney" who "developed over several years" false information in the public record

12   impugning Castro.  (*Id.* ¶¶ 12, 14.)

13        Castro's Complaint does not identify the specific "false information" and "statements"

14   forming the basis of his defamation claim.  Instead, at paragraph 11 of his Complaint, Castro

15   broadly characterizes, in his own words, categories of purportedly false information that Chetsford

16   included on the Castro Wikipedia Page, "including but not limited to": "that Plaintiff was a 'sleazy'

17   tax attorney"; "that Plaintiff was under federal indictment"; and "that Plaintiff never served in the

18   United States military."  (Compl. ¶ 11.)[2]

19        Castro has since stated to the Wikimedia's counsel that he believes Chetsford was paid by

20   the presidential campaign of Donald J. Trump ("Trump Campaign") to make these allegedly

21   defamatory statements.  (Kleine Decl. Ex. D.)  But Castro has also revealed that, in filing the

22   lawsuit, his ultimate "goal is to get Chetsford to agree to testify against the Trump campaign that I

23   know paid him to do this.  The goal is to use this civil action to bankrupt the Trump reelection

24   campaign."  (Kleine Decl. Ex. D. at 4)

25

26

27   [2] Castro also makes passing reference to John Doe 2 "fabricat[ing] a document purportedly from
     the State of Florida that warns Plaintiff not to identify as an International Tax Attorney" (Compl.
28   ¶ 12). Whatever this is referring to, Castro does not connect this to any allegedly defamatory
     statement or to Chetsford.

### C. Plaintiff Serves a Subpoena to Deanonymize Chetsford

Castro served non-party Wikimedia with the Subpoena on June 28, 2023.  The Subpoena seeks the following information:

> A list of all internet protocol addresses used by Wikipedia Administrator 'Chetsford' to access his Wikipedia account over the past 12 months.

(Kleine Decl. Ex. B ("Subpoena").)

The Subpoena was served in contravention of Rule 26(d)(1): That rule generally precludes (in the absence of a court order) any discovery prior to the parties' Rule 26(f) conference.  Since Castro does not know who the other parties are, no Rule 26(f) conference could have yet taken place in the Northern District of Texas case.  Further, Castro did not move for a court order allowing him to issue the subpoena prior to the Rule 26(f) conference.  (Kleine Decl. Ex. O.)[3]

Wikimedia timely objected to Castro's subpoena on July 12, 2023.  (Kleine Decl. Ex. C ("Obj.").)  Wikimedia objected that the subpoena sought "information protected by the constitution of the United States and California, protections against de-anonymization or discovery into communications of individuals, including based on speech, and other privacy rights and statutes." (Obj. at 3:12-18.)  It also objected that the subpoena sought "information that is not relevant to any party's claim or defense," was "not proportional to the needs of the case," and imposed "undue burden and expense."  (Obj. at 3:19-23.)

The meet-and-confer process proved fruitless.  Castro asserted that Wikimedia "lack[ed] standing" to raise any First Amendment or privacy issues "on behalf of Chetsford."  (Kleine Decl. Ex. D. at 4.)  Castro also made clear his belief that Chetsford "engaged in a paid attack on me" at the behest of the Trump Campaign and his aim to use this lawsuit against Chetsford as a means of "bankrupt[ing] the Trump reelection campaign."  (*Id.*)  On July 20, 2023, Wikimedia proposed that it would recommend that volunteer user Chetsford provide Castro an (pseudonymized) affidavit

---

[3] On this ground alone, the Court may hold the subpoena procedurally defective and deny the motion to compel.  *See, e.g.*, *Deuss v. Siso*, No. 14-cv-00710-YGR (JSC), 2014 WL 4275715, at *6 (N.D. Cal. Aug. 29, 2014); *Mick Haig Prods., e.K. v. Does*, No. 10-CV-1900-N, 2011 WL 5104095, at *3-7 (N.D. Tex. Sept. 9, 2011) (sanctioning attorney for serving subpoenas on internet service providers, seeking user information, prior to Rule 26 conference without court permission).

representing that Chetsford was neither paid to edit Castro's Wikipedia page nor coordinating with the Trump Campaign. (Kleine Decl. ¶ 6.) On July 24, 2023, Castro rejected this offer and shifted his theory: "Chetsford being paid by a third-party would be shrugged off by me as mere business; not personal. However, his assertion that this was not a business transaction leaves only the conclusion that this is incredibly personal," "mak[ing] the issue of malice that much more extreme." (Kleine Decl. Ex. D. at 1)

Castro filed his Motion to Compel on July 31, 2023. (ECF 1 ("Mot.").)[4] Castro reverted to his prior theory: that Chetsford made unspecified "defamatory accusations and statements" against Castro "in retaliation for Castro having initiated a civil action against former President Donald J. Trump to challenge his eligibility to hold public office in the United States[.]" (Mot. at 4.)[5]

## D.   IP Addresses Can Be Correlated with User Identity

An Internet Protocol (IP) number is a unique numeric value assigned by an Internet Service Provider (ISP) to a device that accesses the Internet.[6] By using the IP address affiliated with a specific device, it is possible to ascertain which ISP was used by the user to gain access to the Internet[7] and trace the IP address to a region of origin.[8] With this information, a party can then compel the ISP to produce the names, addresses, email addresses, and other identifying information used in connection with a specific IP address.[9]

---

[4] Castro filed his Motion by mail postmarked July 27, 2023 (Mot. at 4); it was accepted by the Court on July 31, 2023 (ECF 1.)

[5] Although Castro's Motion to Compel purports to be "based upon . . . the Joint Statement regarding discovery disagreement, which will be filed pursuant to the local rules," (Mot. at 4), Plaintiff confirmed with Wikimedia's counsel that the statement was a mistaken reference to E.D. Cal. Civil Local Rule 251, not applicable here. (Kleine Decl. ¶ 7.)

[6] *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1145 (N.D. Cal. 2008); *Craigslist, Inc. v. 3Taps Inc.*, 942 F. Supp 2d 962, 969 n.7 (N.D. Cal. 2013).

[7] *See id.*

[8] *USA v. Vortman*, No. 16-cr-00210-TEH-1, 2017 WL 1493100, at *1 n.1 (N.D. Cal. Apr. 26, 2017).

[9] *C.f. Veolia Transp. Servs., Inc. v. Evanson*, No. 10-01392-PHX-NVW. 2011 WL 5909917, at *2 (D. Ariz. Nov. 28, 2011); Order Granting in Part and Denying in Part Plaintiffs Motion for Leave to Serve Third Party Subpoena Prior to a Rule 26(F) Conference, *Collins v. Does 1-34*, No. 12-cv-1474-WQH-DHB (S.D. Cal. Jul. 25, 2012).

1    Thus, requiring Wikimedia to produce the IP addresses associated with Chetsford will arm

2    Castro with all the information needed to subpoena the ISPs involved to obtain Chetsford's name

3    as well as other information about him or her.

### III.    ARGUMENT

#### A.    Chetsford's Anonymous Wikipedia Edits Are Constitutionally Protected Speech

Enforcement of the subpoena would run roughshod over the free speech rights of Wikipedia editor Chetsford.  The Supreme Court and Ninth Circuit have long recognized that the First Amendment protects the freedom for individuals like Chetsford to engage in anonymous online speech.  "'[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the contents of a publication, is an aspect of the freedom of speech protected by the First Amendment.'"  *In re DMCA § 512(h) Subpoena to Twitter, Inc.* ("*Twitter Subpoena*"), 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) (quoting *McIntyre*, 514 U.S. at 342).  Likewise, the right to free speech under Article I Section 2 of the California Constitution—which "affords protection more definitive and inclusive than the First Amendment"—also includes a right to remain anonymous.  *Schuster v. Mun. Ct.*, 109 Cal. App. 3d 887, 892-93 (Cal. Ct. App. 1980).

The right to anonymous speech applies with equal force to "the ability to speak anonymously on the internet."  *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011); *see also Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1164 (Cal Ct. App. 2008) ("[s]peech on the Internet is also accorded First Amendment protection . . . '[o]ur cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium'") (citation omitted).  Users "should be free to participate in online forums without fear that their identity will be exposed under the authority of the court," and "unsupported allegation[s] of wrongdoing" "do not suffice to overcome the First Amendment rights of the Internet users."  *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092, 1097 (W.D. Wash. 2001).  And so, "[w]hen adjudicating discovery requests that would unmask an anonymous speaker, then, courts must consider the First Amendment implications of disclosure—just as they would when adjudicating any other discovery request that risks infringing First Amendment rights."  *Twitter Subpoena*, 608 F. Supp. 3d at 876;

1    *see also ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 632 (Cal. Ct. App. 2017) (under

2    California constitution, right to anonymity "limits what courts can compel through civil

3    discovery").

4          Chetsford likewise has a constitutional right to anonymous speech on the Internet, including

5    on Wikipedia, and the release of identifying information pursuant to the Subpoena would thus

6    infringe on her or his constitutional rights.  Being able to use a pseudonym is especially important

7    for speech concerning a candidate for public office.  *See McIntyre*, 514 U.S. at 358-71 (Thomas, J.,

8    concurring) (detailing historical tradition of "the First Amendment [] protect[ing] an author's right

9    to express his thoughts on political candidates or issues in an anonymous fashion"); *cf. Issa v.*

10   *Applegate*, 31 Cal. App. 5th 689, 704 (Cal. Ct. App. 2019) (explaining, in defamation context,

11   "wide berth" given to statements "that challenge or criticize statements made or actions taken by

12   candidates seeking elected office").  Chetsford's Wikipedia edits, using a pseudonym, were in

13   furtherance of his constitutional right to free, anonymous speech, and the content of those edits

14   (along with Chetsford's identity) are constitutionally privileged expression.

15         Contrary to Castro's assertion (Mot. at 3), Wikimedia has standing to challenge Castro's

16   subpoena based on Chetsford's constitutional rights.  "The Ninth Circuit has [] recognized that

17   internet platforms can assert the First Amendment rights of their users, based on the close

18   relationship between the platform and its users and the 'genuine obstacles' users face in asserting

19   their rights to anonymity."  *Twitter Subpoena*, 608 F. Supp. 3d at 878 (citing *In re Grand Jury*

20   *Subpoena*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017)).  After all, a "platform" like Wikimedia "that

21   permits anonymous posting . . . risks losing users if people learn that the [platform] discloses users'

22   identities to anyone who asks."  *Id.*

23   **B.    Under Established First Amendment Law, Plaintiff Must Show He Has a Viable**
     **Claim, Supported by Evidence, Before He Can Take Discovery Regarding Chetsford's**
24   **Identity**

25         As Castro's Subpoena would invade Chetsford's right to free, anonymous speech, Castro

26   must do more than "simply to plead and pray" a defamation claim (though, as described below, he

27   has failed to clear even that low bar).  *Highfields Cap. Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 975

28

1    (N.D. Cal. 2005). Instead, applying core First Amendment principles, the Ninth Circuit and this
2    court apply a two-step test.

3         *First,* at the threshold, "the party seeking the disclosure must demonstrate a prima facie case
4    on the merits of the underlying claim." *Twitter Subpoena*, 608 F. Supp. 3d at 876. To do so, a
5    plaintiff must "adduce, *without the aid of discovery*, *competent evidence* addressing all the
6    inferences of facts" for "all elements of [the] claim." *In re Rule 45 Subpoenas Issued to Google*
7    *LLC & LinkedIn Corp. Dated July 23, 2020 ("Google & LinkedIn Subpoenas")*, 337 F.R.D. 639,
8    649 (N.D. Cal. 2020) (emphasis added). "Allegation and speculation are insufficient." *Highfields*,
9    385 F. Supp. 2d at 975 ("The standards that inform Rule 8 and Rule 12(b)(6) offer too little
10   protection to the defendant's competing interests."). Rather, plaintiff's showing must be sufficient
11   to "survive a hypothetical motion for summary judgment." *Anonymous Online Speakers*, 661 F.3d
12   at 1174-76.[10]

13        This requirement "appropriately balances a defamation plaintiff's right to protect his
14   reputation and a defendant's right to speak anonymously," ensuring the Court's subpoena power is
15   not wielded to "chill potential posters from exercising their First Amendment right to speak
16   anonymously." *Id.* at 1176. After all, "[p]eople who have committed no wrong should be able to
17   participate online without fear that someone who wishes to harass or embarrass them can file a
18   frivolous lawsuit and thereby gain the power of the court's order to discover their identit[ies]."
19   *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).[11]

20

21

22

---

23   [10] As to which law applies to this dispute: For purposes of this brief, Wikimedia adopts the approach
     of the Northern District in *Google & LinkedIn Subpoenas,* 639. When asked by an out-of-state
24   petitioner to enforce a subpoena seeking information on an anonymous user's identity the Court
     should (1) apply the First Amendment test used by the Northern District of California to assess
25   whether a plaintiff has met his burden to enforce a subpoena to uncover a defendant's identity, and
     (2) apply the law of the plaintiff's domicile (here, Texas) as to the narrower question of whether
26   plaintiff has a viable defamation claim.
     [11] California courts likewise have adopted a framework to assessing deanonymizing third-party
27   subpoenas that mirrors the first factor of the Ninth Circuit's test: a plaintiff must "make a prima
     facie showing of the elements of libel in order to overcome a defendant's motion to quash a
28   subpoena seeking his or her identity." *Krinsky*, 159 Cal. App. 4th at 1172.

*Second,* and only if plaintiff meets his burden to show both the legal and evidentiary merits of his claim, "the court balances the need for the discovery against the First Amendment interest at stake." *Twitter Subpoena*, 608 F. Supp. 3d at 876.

This district commonly applies this test to reject attempts via third-party subpoena to unmask anonymous internet users. *E.g.*, *Twitter Subpoena*, 608 F. Supp. 3d at 883 (quashing subpoena to force disclosure of Twitter user identities, "in a heartbeat"); *Google & LinkedIn Subpoenas*, 337 F.R.D. at 651, 652 (likewise quashing subpoena to unmask Google and LinkedIn users, in defamation case); *Awtry v. Glassdoor, Inc.*, No. 16-mc-80028-JCS, 2016 WL 1275566, at *13-16 (N.D. Cal. Apr. 1, 2016) (denying motion to compel third-party subpoena to force disclosure of user identities, in defamation case); *Music Grp. Macao Com.Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 986-87 (N.D. Cal. 2015) (same). It should do the same here.

## C.   Plaintiff's Subpoena Is Unenforceable, as Plaintiff Has No Viable Claim

### 1.   Plaintiff Does Not Even Properly Plead a Defamation Claim, Let Alone a Defamation *Per Se* Claim

Even if he were (contrary to law) permitted to rely solely on his allegations, Castro does not have a viable claim for defamation. At the outset, Castro's defamation claim fails because the complaint does not bother to identify the specific statements made by Chetsford that Castro alleges are defamatory. *See Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1079 (S.D. Cal. 2021) ("Even under the liberal federal pleading standards, general allegations of the defamatory statements that do not identify the substance of what was said are insufficient[.]"). A defamation case "fail[s] as a matter of law" unless the plaintiff precisely "identif[ies] a specific statement" at issue. *Nguyen v. Hoang*, No. H-17-2060, 2020 WL 12579765, at *4 (S.D. Tex. Aug. 10, 2020); *see Vogel v. Felice*, 127 Cal. App. 4th 1006, 1017 n.3 (Cal. Ct. App. 2005) (given "plaintiffs' failure to clearly and comprehensively specify the statements by which they claim to have been injured," courts are "justified in disregarding any evidence or argument concerning statements not explicitly set forth in the complaint"). Otherwise, "the court is left only with opinions and conclusions as to the libelous matter." *Roe v. Patterson*, No. 19-CV-179-SDJ, 2023 WL 2787956, at *10 (E.D. Tex. Apr. 4, 2023) (quotation mark omitted). And so "[c]ourts require *more* particular pleading" in

1   defamation cases "to allow the opposing party to raise the appropriate defenses." *Jackson v. Dallas*

2   *Indep. Sch. Dist.*, No. CIV. A.398-CV-1079, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998)

3   (emphasis added).

4       The Complaint altogether fails to meet this standard—it never identifies the allegedly

5   defamatory statements.  Instead, it merely summarizes—***in one paragraph***—Castro's paraphrase

6   of the "statements" at issue, without quoting them beyond a single word ("sleazy," which is by its

7   nature opinion[12]), leaving the Court no way to assess whether the actual statements are defamatory.

8   (Compl. ¶ 11.)   Castro's Motion provides no further help, again referring to "outrageously

9   defamatory accusations and statements" with no hint as to what the statements at issue are.  (Mot.

10  at 1-2.)

11      Likewise, while Castro claims as false such "statements" as "Plaintiff was under federal

12  indictment" (Compl. ¶ 11), he fails to specify the statements and fails to say *why* they are

13  defamatory; "simply describ[ing] these statements as false, rather than even minimally explaining

14  what makes them so . . . , do[es] not suffice to state a claim" of defamation. *Crittendon v. Muldrow*,

15  No. 22-cv-09153-RS, 2023 WL 2743582, at *3 (N.D. Cal. Mar. 31, 2023) (dismissing defamation

16  claim, based on user Facebook comments, for failure to state a claim), *appeal filed*.

17      Moreover, Castro's claim is for defamation *per se* (not *per quod*) (Compl. ¶¶ 20-27),

18  meaning that, as a matter of law, "the defamatory nature of the challenged statement must be

19  apparent on its face without reference to extrinsic facts." *Iola Barker v. Hurst*, No. 01-17-00838-

20  CV, 2018 WL 3059795, at *8 (Tex. Ct. App. June 21, 2018).  Yet Castro does not identify the

21  statements, let alone plead they are defamatory on their face.

22      And so even under the Rule 8 pleading standard—which is *lower* than plaintiff's burden

23  here to make out a prima facie case backed by competent evidence, *Highfields*, 385 F. Supp. 2d at

24

25  _____

26  [12] "A statement is not legally defamatory if [] it cannot be verifiably false." *O'Rourke v. Warren*, No. 03-22-00416-CV, 2023 WL 3914278, at *8 (Tex. App. June 9, 2023).  References to Castro as "sleazy" cannot be verifiably true or false—"sleazy" lacks precise meaning. *See, e.g.*, *Catalfo*

27  *v. Jensen*, 657 F. Supp. 463, 468 (D.N.H. 1987) (under New Hampshire law, referring to subject as "'sleazy'" is "protected expression of opinion" as it "does not have a precise meaning such that

28  it is capable of verification").

975—Castro has failed to allege a defamation claim.  The Court can and should deny the Motion on this basis alone.[13]

### 2.    Castro Fails to Allege Actual Malice or Demonstrate Evidence of Negligence

Moreover, Castro is a public figure and must therefore allege, beyond mere assertions and conclusions, that Chetsford acted with actual malice.  He does not.  Castro's failure to allege actual malice, let alone provide "competent evidence of fault on [Chetsford's] part," is grounds to deny Castro's subpoena.  *Google & LinkedIn Subpoenas*, 337 F.R.D. at 651.

### (1)    Castro Is a Public Figure

Petitioner Castro is, in his own words, "an FEC-registered Republican presidential candidate actively pursuing the nomination of the Republican Party to pursue the Office of the Presidency of the United States" in the 2024 election.  *Castro v. Trump*, Eleventh Circuit Appeal No. 23-12111, Appellant's Opening Brief, at *4 (11th Cir. July 14, 2023), ECF No. 7 (attached as Kleine Decl. Ex. P.).  A "candidate for public office" is a public figure that must demonstrate "actual malice" for purposes of a defamation claim.  *St. Amant v. Thompson*, 390 U.S. 727, 728 (1968); *accord Shahid Buttar for Congress Comm. v. Hearst Commc'n., Inc.*, No. 21-cv-05566-EMC, 2023 WL 2065044, at *10 (N.D. Cal. Feb. 16, 2023) (congressional candidate); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000) (mayoral candidate).[14]  Castro's allegation that he is not a public figure because his campaign has provoked "only minimal public attention from a few obscure media outlets" (Compl. ¶ 22), does not change this result.  *Cf. Trotter v. Jack Anderson Enters.*, 818 F.2d 431, 435-46 (5th Cir. 1987) (holding lack of "frequen[cy] in the press" is "not decisive" as "an individual cannot erase his public-figure status by limiting public comment and maintaining a low public profile").[15]

---

[13] Wikimedia reserves the right to challenge whether any statements, if ever identified by Castro, are defamatory, let alone backed by competent evidence as to each element of a defamation per se claim.

[14] In Texas, "[f]ederal constitutional law dictates [the] standard of review on [] actual malice," *Turner*, 38 S.W. 3d at 120. This section illustratively cites California and Ninth Circuit cases also applying constitutional actual-malice law.

[15] Moreover, as noted above, Castro *has* received media attention, some of it stemming his own voluntary interviews and lawsuits.  (*See supra* n.1 and Kleine Decl. Ex. J.)  Alternatively, Castro has, at minimum, "voluntarily inject[ed] himself . . . into a particular public controversy"—the 2024 U.S. presidential campaign—and established himself as a limited-purpose public figure; he

Castro must therefore show that Chetsford made false statements with actual malice, supported by at least "competence evidence of fault on [Chetsford's] part." *Google & LinkedIn Subpoenas*, 337 F.R.D. at 651. Castro nevertheless argues in his Complaint that because there was "economic motivation" for the statements, they qualify as "commercial speech" and therefore relieve him of pleading or proving actual malice. (Compl. ¶ 15.) That is not the test: "'Commercial speech' has special meaning in the First Amendment context"; it is speech that "'does no more than propose a commercial transaction.'" *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001); *see also O'Grady v. Twentieth Century Fox Film Corp.*, No. 02 CV 173, 2003 WL 24174616, at *12 (E.D. Tex. Dec. 19, 2003) ("commercial speech" asks "whether the speech is an advertisement" or "relates to a specific product or service"). Biographical statements about Castro on Wikipedia's encyclopedic pages do not qualify.

### (2)    Castro Fails to Allege Actual Malice

Castro fails even to adequately allege actual malice, let alone provide any competent evidence of fault. To satisfy the actual malice standard, a public figure must demonstrate a writer published the statements at issue "with knowledge that [such statements] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Actual malice is a high bar: "the actual malice standard requires that a defendant have, subjectively, significant doubt about the truth of his statements at the time they are made," or that defendant had "actual [] knowledge of . . . the falsity of a statement" when it was made. *Bentley v. Bunton*, 94 S.W.3d 561, 591, 596 (Tex. 2002). "'An understandable misinterpretation of ambiguous facts does not show actual malice.'" *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 855 (Tex. 2005) (quoting *Bentley*, 94 S.W.3d at 596). Nor do "general allegations that a defendant should have known or should have investigated the truth of his or her statements [] adequately plead actual malice." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).

---

thus must still demonstrate actual malice as to statements that broadly concern his fitness for office. *Balla v. Hall*, 59 Cal. App. 5th 652, 676 (Cal. Ct. App. 2021); *see Rodriguez v. Gonzales*, 566 S.W.3d 844, 850-52 (Tex. App. 2018) (holding that where allegedly defamatory statements "concerned [] fitness for office," they must have been made with actual malice).

Castro's complaint (or, for that matter, his Motion) does not allege that Chetsford acted with actual malice. Instead, Castro merely asserts that "Defendants acted with actual malice in publishing the knowingly false information' and "Defendants entertained serious doubts about the truthfulness of the statements but published them anyway." (Compl. ¶¶ 18-19.) Such threadbare assertions of the elements of actual malice do not suffice even under a basic pleading standard. *Shaunfield v. Experian Info. Sols., Inc.*, No. 12-CV-4686-M (BH), 2013 WL 12354439, at *4 (N.D. Tex. Dec. 20, 2013); *Tull v. Higgins*, No. 21-cv-01566-DMR, 2021 WL 6116971, at *8 (N.D. Cal. Dec. 27, 2021).

**D.      The Balance of Interests Weighs Decidedly in Chetsford's and Wikimedia's Favor**

Because Castro cannot establish a *prima facie* case for defamation, the Court "need not consider the second part" of the analysis. *Google & LinkedIn Subpoenas*, 337 F.R.D. at 651. Even if the Court were to engage in balancing, however, the rights of Wikipedia users like Chetsford to speak anonymously plainly outweigh the interests in Castro pursuing his defamation claim (which is—by his own words—not geared at obtaining a judgment against Chetsford, but at convincing Chetsford to testify against the Trump Campaign). Wikimedia (and knowledge-seeking readers around the world) gain from allowing Wikipedia users to edit Wikipedia articles without fear of being made the target of meritless lawsuits intended to squelch their speech. *See Awtry*, 2016 WL 1275566, at *15 (First Amendment concerns are pronounced when "there is a significant likelihood that ordering disclosure of the identities of the [authors . . .] will result in a substantial chilling effect" to online speech.). Moreover, Chetsford's speech concerned a matter of public interest— the background and credentials of a candidate for President of the United States. And enforcing the subpoena will result in irreparable injury: once Chetsford has lost her or his anonymity, it cannot be recovered. In contrast, the burden on Castro is minimal. Namely, because Castro's defamation claim is not viable, as detailed above, Castro's interest in Chetsford's identity is at a low ebb. Nor has Castro identified any specific harm or lost business. On balance, Chetsford's First Amendment rights should prevail.

1

### IV.    CONCLUSION

2        For the reasons set forth above, Wikimedia respectfully requests that this Court deny

3   Plaintiff's motion to compel.

4   Dated: August 14, 2023                              COOLEY LLP

5

6                                                       By: */s/ Benjamin H. Kleine*
                                                            Benjamin H. Kleine
7
                                                        Attorney for Third-Party
8                                                       WIKIMEDIA FOUNDATION, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28