UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CASTRO,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>        Defendant. | Case No. 23-mc-80198-TSH<br><br>**REPORT & RECOMMENDATION RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>Re: Dkt. No. 1 |

## I.   INTRODUCTION

This matter has been referred to the undersigned to prepare a report and recommendation regarding John Castro's motion to compel compliance with a subpoena issued in *J.A. Castro v. John Doe I, et al.*, Case No. 4:23-cv-613-P (the "Texas action"), a defamation case pending in the United States District Court for the Northern District of Texas. ECF No. 1. Non-party Wikimedia Foundation, Inc., which was served with the subpoena, and John Doe 1 (who goes by the Wikipedia username "Chetsford"), a defendant in the Texas action who is the target of the subpoena, have both filed oppositions. ECF Nos. 3 (Chetsford Opp'n), 7 (Wikimedia Opp'n). Castro filed a reply. ECF No. 11. The undersigned finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the undersigned **RECOMMENDS** the Court **GRANT** Castro's motion for the following reasons.

## II.   BACKGROUND

Castro brings the Texas action against Donald J. Trump "and his associated entities," who Castro alleges "engaged the paid Wikipedia editorial services of Defendant John Doe 1, a.k.a. Chetsford, to publish immensely damaging and defamatory statements against" him. Sec. Am.

Compl. ("SAC") ¶ 1, Texas Action, ECF No. 17. He brings one claim for defamation per se, alleging Trump and Defendant John Doe 2, through the funds of SA PAC, MAGA Inc., and the RICO Fund, paid Chetsford to create a Wikipedia page for Castro "for the sole purpose of defaming Plaintiff and damaging his reputation." *Id.* ¶¶ 11, 30-37. Castro alleges

> The false information included, but was not limited to, statements that Plaintiff was under federal indictment, which is verifiably false, that Plaintiff was a "sleazy" tax attorney, and that Plaintiff never served in the United States military, which is verifiably false since Plaintiff has a DD-214 with an Honorable Discharge from the United States Army and is legally classified as a Veteran despite the fact that Plaintiff does not identify as a veteran since his wartime service was while attending the United States Military Academy Preparatory School, which is now located at West Point.

*Id.* ¶ 12. Castro also alleges "Defendant John Doe 2 fabricated a document purportedly from the State of Florida that warns Plaintiff not to identify as an International Tax Attorney. The letter is fabricated and likely constitutes a criminal violation in the State of Florida for falsely using the state seal and seemingly official state letterhead." *Id.* ¶ 13. He seeks "not less than $180,000,000.00 for (1) lost profits; (2) lost enterprise value, and (3) punitive damages." *Id.*, Prayer for Relief.

The Wikimedia Foundation, Inc. is a 501(c)(3) nonprofit charitable organization headquartered in San Francisco, California. Sutherland Decl. ¶ 3, ECF No. 7-1. Wikimedia hosts Wikipedia., a web-based, free-content encyclopedia that contains volunteer-authored articles. *Id.* ¶¶ 4-5. It is written, edited, and curated collaboratively by largely anonymous or pseudonymous Internet volunteers who do so without pay. *Id.* ¶ 5. Except in limited cases where editing is restricted to prevent disruption or vandalism to articles, anyone with Internet access can create, write, or make changes to Wikipedia articles. *Id.* ¶ 9. Users can contribute anonymously, under a pseudonym, or, if they choose to, with their real identity. *Id.* ¶ 7.

On June 28, 2023, Castro served Wikimedia with a subpoena seeking: "A list of all internet protocol addresses used by Wikipedia Administrator 'Chetsford' to access his Wikipedia account over the past 12 months." Kleine Decl., Ex. B (subpoena). After Wikimedia objected to the subpoena, Castro filed the present motion on July 31.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties. The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 advisory comm's note (1970); Fed. R. Civ. P. 34(a)). Rule 26 permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

### IV. DISCUSSION

Castro bases his complaint on alleged statements that he "was under federal indictment, which is verifiably false, that Plaintiff was a 'sleazy' tax attorney, and that Plaintiff never served in the United States military, which is verifiably false since Plaintiff has a DD-214 with an Honorable Discharge from the United States Army and is legally classified as a Veteran despite the fact that Plaintiff does not identify as a veteran since his wartime service was while attending the United States Military Academy Preparatory School, which is now located at West Point."

3

1  SAC ¶ 12.  He alleges that "[b]ecause there is an economic motivation for the false defamatory

2  statements, this is commercial speech."  *Id.* ¶ 16.

3        Both Wikimedia and Chetsford object to the subpoena on the grounds[1] that Chetsford's

4  Wikipedia entries are protected free speech under the First Amendment and because Castro fails to

5  allege a viable defamation claim.[2]

6  **A.**    **Legal Standard**

7        The First Amendment protects the rights of individuals to speak anonymously.

8  *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 166–67 (2002);

9  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42 (1995).  "An author's decision to

10 remain anonymous, like other decisions concerning omissions or additions to the content of a

11 publication, is an aspect of the freedom of speech protected by the First Amendment."  *McIntyre*,

12 514 U.S. at 352.  The Ninth Circuit recognizes that the decision to remain anonymous extends to

13 anonymous speech made on the internet.  *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173

14 (9th Cir. 2011) ("[O]nline speech stands on the same footing as other speech – there is 'no basis

15 for qualifying the level of First Amendment scrutiny that should be applied' to online speech.")

16 (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)).  "When adjudicating

17 discovery requests that would unmask an anonymous speaker, then, courts must consider the First

18 Amendment implications of disclosure—just as they would when adjudicating any other discovery

19 request that risks infringing First Amendment rights."  *In re DMCA § 512(h) Subpoena to Twitter,*

20 *Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022).

---

[1] Wikimedia and Chetsford also argue that the subpoena is premature under Rule 26(d)(1), which generally bars discovery before the Rule 26(f) conference occurs.  The undersigned initially agreed with that position.  ECF No. 25.  However, the Texas court subsequently issued an order authorizing early discovery.  Texas Action, ECF No. 21.

[2] Chetsford also argues the Texas court lacks subject matter jurisdiction over the case.  However, the undersigned finds this "contention cuts to the heart of the issuing court's power to hear the case—a question best suited for the court whose jurisdiction is being challenged."  *Bogard Constr. Inc. v. Oil Price Info. Serv., LLC*, 2022 WL 1213307, at *3 (D. Md. Apr. 25, 2022) ("In this regard, allowing the issuing court to decide questions of its own subject matter jurisdiction preserves, rather than upends, the orderly administration of the case.") (citing *Stafne v. Zilly*, 337 F. Supp. 3d 1079, 1091 (W.D. Wash. 2018), *aff'd*, 820 F. App'x 594 (9th Cir. 2020) ("A court in a separate action, such as this one, lacks jurisdiction to issue what is 'in essence . . . a writ of mandamus' to another district court judge[.]") (quoting *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1393 (9th Cir. 1987)).

United States District Court
Northern District of California

The Ninth Circuit has recognized that internet platforms can assert the First Amendment rights of their users, based on the close relationship between the platform and its users and the "genuine obstacles" users face in asserting their rights to anonymity. *In re Grand Jury Subpoena*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017). When third-party providers such as Wikimedia receive subpoenas to produce identifying information of posters of anonymous speech, courts apply the appropriate First Amendment standard to ensure that a person's right to anonymous speech is protected. *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015); *In re Anonymous Online Speakers*, 661 F.3d at 1172–77. In *Anonymous Online Speakers*, the Ninth Circuit reviewed the developing tests in the area of anonymous online speech and left it to the discretion of district courts to choose the proper standard in a given case, based on the nature of the speech at issue. *Id.* at 1174–77; *see, e.g., Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *5 (N.D. Cal. Nov. 9, 2011) ("[I]n choosing the proper standard to apply, the district court should focus on the nature of the [defendant's] speech[.]") (cleaned up); *SI03, Inc. v. Bodybuilding.com, LLC*, 441 F. App'x 431, 431–32 (9th Cir. 2011) (same). "For example, . . . commercial speech should be afforded less protection than political, religious, or literary speech[.]" *In re Anonymous Online Speakers*, 661 F.3d at 1177.

"Operationally, the inquiry consists of two steps." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876. "First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest at stake." *Id.* (citing *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760–61 (N.J. Super. Ct. App. Div. 2001); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974–75 (N.D. Cal. 2005)). Thus, when adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should

> (1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim.

5

*Id.*

When asked by an out-of-state petitioner to enforce a subpoena seeking information on an anonymous user's identity, the Court should (1) apply the First Amendment test used by the Northern District of California to assess whether a plaintiff has met his burden to enforce a subpoena to uncover a defendant's identity, and (2) apply the law of the plaintiff's domicile (here, Texas) as to the narrower question of whether plaintiff has a viable defamation claim. *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 649-50 (N.D. Cal. 2020).

**B.  Analysis**

    **1.  Defamation Per Se**

Wikimedia and Chetsford argue Castro's defamation per se claim fails at the outset because his complaint does not identify the specific statements made by Chetsford that Castro alleges are defamatory. They also argue the claim fails because Castro is a declared candidate for the Republican nomination for President of the United States, which makes him a public figure subject to a heightened standard.

To establish a defamation claim under Texas law, a plaintiff must prove that "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). For a claim of defamation per se, "the defamatory nature of the challenged statement must be apparent on its face without reference to extrinsic facts." *Iola Barker v. Hurst*, 2018 WL 3059795, at *8 (Tex. App. June 21, 2018).

To demonstrate a prima facie case of defamation in the context of a First Amendment challenge, Castro must "adduce, without the aid of discovery, competent evidence addressing all the inferences of facts" for "all elements of [the] claim." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. at 649. "Allegation and speculation are insufficient." *Highfields Capital Mgmt.*, 385 F. Supp. 2d at 975 ("The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing

interests."). Rather, plaintiff's showing must be sufficient to "survive a hypothetical motion for summary judgment." *In re Anonymous Online Speakers*, 661 F.3d at 1174-76. This requirement "appropriately balances a defamation plaintiff's right to protect his reputation and a defendant's right to speak anonymously," ensuring the Court's subpoena power is not wielded to "chill potential posters from exercising their First Amendment right to speak anonymously." *Id.* at 1176. After all, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

The undersigned finds Castro has properly alleged a claim for defamation per se. He alleges Defendants published false statements – that he was under federal indictment and that he never served in the United States military.[3] Wikimedia and Chetsford have not shown these statements are true. As to military service, Chetsford argues "[t]he allegation that Chetsford wrote that Castro was not in the military is equally non-actionable. It is not defamatory at all." Chetsford Opp'n at 15. In support of this argument, he cites a 1950 D.C. Circuit Court case, *Williams v. Anti-Defamation League of B'nai B'rith*, 185 F.2d 1005 (D.C. Cir. 1950). In that case, the Court found: "A record of military service is, of course, an honor and a credit, but it is no libel to say a man lacks it. Many worthy citizens are without military honors." *Id.* at 1007. Even if *Williams* were binding, it would not help Chetsford because the immediate next sentence in the opinion is: "To say a man falsely claimed military rank is defamatory." *Id*. Here, Castro alleges that he is a military veteran, SAC ¶ 12, so the alleged statement that he never served in the United States military amounts to an assertion that he falsely claimed military rank. In any event,

---

[3] It is unclear whether the other two statements alleged in Castro's complaint constitute defamation under Texas law. As to the alleged statement that Castro is sleazy, "[a] statement is not legally defamatory if [] it cannot be verifiably false." *O'Rourke v. Warren*, 2023 WL 3914278, at *8 (Tex. App. June 9, 2023). Other courts have found that referring to a plaintiff as "sleazy" likely cannot be verifiably true or false because it lacks precise meaning. *See, e.g., Catalfo v. Jensen*, 657 F. Supp. 463, 468 (D.N.H. 1987) (under New Hampshire law, referring to subject as "'sleazy'" is "protected expression of opinion" as it "does not have a precise meaning such that it is capable of verification"). As to the allegation that John Doe 2 fabricated a document purportedly from the State of Florida, it is unclear how this relates to Castro's defamation claim since his complaint does not allege any statement connected with it.

7

*Williams* in non-binding authority that does not purport to apply Texas defamation law, and the Court is aware of no Texas authority establishing that statements regarding military service cannot be defamatory. *Cf. Hoover v. Tuttle*, 611 So. 2d 290, 293 (Ala. 1992) ("Because there appears to be a fact question as to whether Tuttle, Mullens, and Wright, either individually or in concert, acted outside the scope of their duties to the Post by making false statements concerning Hoover's military service record, the summary judgment for Tuttle, Mullens, and Wright could not have been based on a lack of publication. There was sufficient evidence of publication and of a conspiracy among these individual defendants to defame Hoover to warrant submission of the defamation claims to a jury.").

Castro further alleges Defendants "knew that the statements were false and acted with either reckless disregard for the truth or with actual malice by publishing the knowingly false information," the "statements were accompanied with malice, wantonness, and a conscious desire to cause injury, and that he "sustained serious reputational damages to his professional career." SAC ¶¶ 33-36.

Wikimedia and Chetsford argue that Castro is a public figure and must therefore allege, beyond mere assertions and conclusions, that Chetsford acted with actual malice. Castro appears to admit that he is a candidate running for the office of President of the United States. *See* Reply at 4 ("Falsely accusing someone who is running for President of being under federal criminal indictment and lying about their military service with the knowledge that its false of reckless disregard to whether it is false or not is precisely what the United States Supreme Court specifically held is not protected by the First Amendment to the United States Constitution."); *see also* SAC ¶ 24 ("Plaintiff has only received minimal public attention from a few obscure media outlets."). A "candidate for public office" is a public figure that must demonstrate "actual malice" for purposes of a defamation claim. *St. Amant v. Thompson*, 390 U.S. 727, 728 (1968); *Shahid Buttar for Congress Comm. v. Hearst Commc'n., Inc.*, 2023 WL 2065044, at *10 (N.D. Cal. Feb. 16, 2023) (congressional candidate); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000) (mayoral candidate).

To satisfy the actual malice standard, a public figure must demonstrate a writer published

8

the statements at issue "with knowledge that [such statements] w[ere] false or with reckless disregard of whether [they] w[ere] false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Here, Castro alleges Defendants "published false and defamatory statements not once, but repeatedly over a substantial period of time," that they "knowingly and intentionally relied on and used unreliable sources to perpetuate the defamatory statements about [him]," and "acted with actual malice in publishing the knowingly false information." SAC ¶¶ 18-20. He further alleges "Defendants entertained serious doubts about the truthfulness of the statements but published them anyways." *Id.* ¶ 21. At this stage in the proceedings, the undersigned finds that falsely accusing someone who is running for President of being under federal criminal indictment and lying about his military service, while using unreliable sources and entertaining serious doubts about the truthfulness of the statements, is enough to satisfy the actual malice standard. *See Bentley v. Bunton*, 94 S.W.3d 561, 591, 596 (Tex. 2002) ("[T]he actual malice standard requires that a defendant have, subjectively, significant doubt about the truth of his statements at the time they are made," or that defendant had "actual [] knowledge of . . . the falsity of a statement" when it was made.)

Accordingly, the undersigned finds Castro can establish a prima facie case of defamation per se.

### 2. First Amendment

As Castro can demonstrate a prima facie case, the Court must balance the need for the discovery against the First Amendment interest at stake. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876. In "evaluating the First Amendment rights of anonymous Internet users in the context of a third-party civil subpoena," district courts have followed the approach taken in *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001). *Rich v. Butowsky*, 2020 WL 5910069, at *3–4 (N.D. Cal. Oct. 6, 2020); *In re Anonymous Online Speakers*, 661 F.3d at 1176 (describing the *2TheMart.com* test). Under that approach, disclosure of anonymous users' identities is appropriate only "in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *2TheMart.com*, 140 F. Supp. 2d at 1095. Courts consider four factors: whether "(1) the subpoena

9

seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source." *Id.*; *Rich*, 2020 WL 5910069, at *3–4. This is a "high[ ] standard," *In re Anonymous Online Speakers*, 661 F.3d at 1176, and the factors are weighed "based on the circumstances of a given case," *Rich*, 2020 WL 5910069, at *4; *Sines v. Kessler*, 2018 WL 3730434, at *13 n.16 (N.D. Cal. Aug. 6, 2018).

At the outset, the undersigned notes the First Amendment does not protect tortious, defamatory, or libelous speech. *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010) (citing *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005)); *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue."). Further, Castro's defamation claim almost surely won't make it off the ground without Wikimedia's help. Wikimedia knows Chetsford's identity; Castro doesn't. And if Wikimedia doesn't identify Chetsford, Castro would be left without a means by which to "vindicate his good name." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 12 (1990). The discovery that Castro seeks, in other words, is critical to the success of his proposed defamation claim.

On the other hand, Wikimedia has an interest in keeping the writers on its website anonymous, so there's a conflict between what Castro needs and what Wikimedia wants. But ultimately, Wikimedia hasn't convinced the undersigned that its interest in preserving anonymity should be prioritized over Castro's interest in protecting his reputation. Further, any potential harm that may arise from disclosure – and by extension, the chilling effect that may result – may be minimized through use of a protective order. Thus, for example, in *Signature Mgmt. Team, LLC v. Automattic, Inc.*, the court ordered that the identity of an alleged copyright infringer be disclosed on the condition that the information would be used by the plaintiff solely for the purposes of protecting its copyright and would not be disclosed to anyone except the parties to the action and their counsel. 941 F. Supp. 2d 1145, 1157 (N.D. Cal. 2013). The court reasoned that

10

the anonymous speaker who was alleged to have infringed the plaintiff's copyright would "suffer only minimal harm" with these protections in place and that the plaintiff's interest in pursuing its copyright claim therefore outweighed the First Amendment concerns. *Id.* The same protective devices can be used in the Texas action. Thus, because Castro's defamation claim is plausible, and the parties may use a protective order to prevent any potential harm, the undersigned finds it appropriate for Wikimedia to reveal Chetsford's identity.

Accordingly, in balancing the need for the discovery against the First Amendment interest at stake, the undersigned finds Castro's need to identify Chetsford weighs in favor of compelling disclosure.

## V.     CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** the Court **GRANT** Castro's motion to compel.

Pursuant to Federal Rule of Civil Procedure 72, any party may serve and file objections to this Report and Recommendation within 14 days after being served. Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO ORDERED.**

Dated: October 12, 2023

THOMAS S. HIXSON
United States Magistrate Judge