Michael E. Rosman (NY Bar. No.  1972215, D.C. Bar No. 454002)
rosman@cir-usa.org
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave. NW, Suite 625
Washington D.C. 20036
(202) 833-8400

Attorney for John Doe 1 (Chetsford)

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

-----------------------------------------------------------------x

| | | |
|---|---|---|
| J.A. CASTRO, | : | Case No. 4:23-mc-80198-YGR |
| Plaintiff, | : | |
| | | MOTION |
| v. | : | |
| JOHN DOE 1 (a.k.a. "CHETSFORD"), JOHN DOE 2, JOHN DOE 3, and JOHN DOE 4, | : | Date:  December 12, 2023 |
| | : | Time:  2:00 p.m. |
| | | Courtroom: Courtroom 1, 4th Floor |
| Defendants, | : | 1301 Clay St., Oakland, CA |
| | : | Judge:  The Hon. Yvonne Gonzales Rogers |
| | : | |

-----------------------------------------------------------------x

**MOTION OF JOHN DOE 1 ("Chetsford") FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**

<u>Table of Contents</u>

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Notice of Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue To Be Decided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.     The Original Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.     The Wikimedia Subpoena And The First Amended Complaint . . . . . . . . . . . . . 4

      C.     The Two Reports And Recommendations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      I.      THE WIKIMEDIA SUBPOENA WAS PREMATURE . . . . . . . . . . . . . . . . . . . 11

      II.     CASTRO WAS OBLIGATED TO PROVIDE COMPETENT EVIDENCE TO
              SUPPORT HIS MOTION TO COMPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      III.    CASTRO FAILED TO DEMONSTRATE SUBJECT MATTER
              JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             A.     Castro Did Not Demonstrate Subject Matter Jurisdiction . . . . . . . . . . . 13

             B.     The R&R Wrongly Refused To Consider Castro's Failure . . . . . . . . . . 16

      IV.    THE R&R ERRED BECAUSE CASTRO DID NOT SUPPORT HIS MOTION
              WITH COMPETENT EVIDENCE DEMONSTRATING A PRIMA FACIE
              CASE OF DEFAMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

             A.     Castro Failed To Support His Claims With Competent Evidence And The
                  R&R Did Not Address That Failure . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.      The R&R Erroneously Concluded That The Statements Were Defamatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.     THE R&R ERRED BECAUSE THE BALANCE WEIGHS IN CHETSFORD'S FAVOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.    IN THE ALTERNATIVE, THE WIKIMEDIA SUBPOENA SHOULD BE NARROWED AND LIMITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Table of Authorities

Cases

*Art of Living Foundation v. Does 1-10*, 2011 U.S. Dist. LEXIS 129836 (N.D. Cal. Nov. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 22, 23

*Bedford v. Spassoff*, 520 S.W.3d 901 (Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Blossoms & Blooms, Inc. v. Doe*, 2022 U.S. Dist. LEXIS 136226 (E.D. Pa. July 29, 2022) 14, 15

*Bogard Constr. Inc. v. Oil Price Info. Serv., LLC*, 2022 U.S. Dist. LEXIS 74726 (D. Md. Apr. 25, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Calderon v. Lowe's Home Centers, LLC*, 2015 U.S. Dist. LEXIS 82278 (C.D. Cal. June 24, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Castro v. Berg*, 2019 U.S. Dist. LEXIS 34362 (N.D. Tex. March 5, 2019) . . . . . . . . . . . . . . . . 2

*Castro v. Gudorf*, 2018 U.S. Dist. LEXIS 164380 (S.D. Ohio Sept. 25, 2018) . . . . . . . . . . . . . 3

*Castro v. United States*, 2023 U.S. Dist. LEXIS 99220 (N.D. Tex. March 29, 2023), *findings accepted and adopted*, 2023 U.S. Dist. LEXIS 98023 (N.D. Tex. June 6, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 1980) . . . . . . . . . . . . . . . . . . . . . 22

*Doe No. 1 v. Burke*, 91 A.3d 1031 (D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Empire Kosher Poultry Inc. v. United Food & Commer. Workers Health & Welfare Fund of Northeastern Pa.*, 285 F. Supp. 2d 573 (M.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . 13

*Highfields Capital Management v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) . . . . . . . . . 12, 22

*Hoover v. Tuttle*, 611 So. 2d 290 (Ala. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 18

*In re DMCA § 512(H) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 (N.D. Cal. 2022) 12, 13, 23

*In re Rule 45 Subpoenas Issued to Google LLC & Linkedin Corp. dated July 23, 2020*, 337 F.R.D. 639 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kechara House*, 2015 U.S. Dist. LEXIS 126124 (N.D. Cal. Sept. 18, 2015) . . . . . . . . . . . . . . 12

*Kilgore v. Providence Place Mall*, 2016 U.S. Dist LEXIS 71315 (D.R.I. April 1, 2016) . . . . . 15

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Meng v. Schwartz*, 305 F. Supp. 2d 49 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Meza v. Lowe's Home Ctrs., LLC*, 2015 U.S. Dist. LEXIS 124634 (N.D. Cal. Sept. 16, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Preston v. Tenet Healthsystem Mem. Med. Ctr.,* 485 F.3d 793 (5th Cir. 2007) . . . . . . . . . . . . 15

*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sandoval v. Doe*, 591 F. Supp. 3d 7 (E.D.N.C. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . 13-15

*Stephens v. Halliburton Co.*, 2003 U.S. Dist LEXIS 15739 (N.D. Tex. Sept. 5, 2003) . . . . 14, 16

*Subaru of America, Inc. v. HTMC, LLC*, 2018 U.S. Dist. LEXIS 224023 (C.D. Cal. Nov. 9, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sweet v. Cardona*, 2023 U.S. Dist. LEXIS 31518 (N.D. Cal. Feb. 24, 2023) . . . . . . . . . . . . . . 19

*Tan v. Doe*, 2014 U.S. Dist LEXIS 61972 (S.D.N.Y. May 1, 2014) . . . . . . . . . . . . . . . . . . . . . . . 7

*USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . 17, 18

*Vogel v. Go Daddy Group, Inc.*, 266 F. Supp. 3d 234 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . 15

*Williams v. Anti-Defamation League of B'nai B'rith*, 185 F.2d 1005 (D.C. Cir. 1950) . . . . 21, 22

<u>Constitutional Provisions, Statutes, and Rules</u>

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 26(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 26(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 26(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 34(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 45(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 56(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 72(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

N.D. Cal. Civil L.R. 72-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.D. Cal. Civil L.R. 7-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. Civ. Prac. & Rem. § 73.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 12, 24

Notice of Motion

Pursuant to Fed. R. Civ. P. 72(b)(2) and Civil L.R. 72-3(a), John Doe 1, aka Chetsford, hereby moves for a *de novo* determination of J.A. Castro's motion (Doc. 1, "Mot.") to enforce a subpoena against Wikimedia Foundation Inc. and its counsel of record. Magistrate Judge Hixson submitted a Report and Recommendation (Doc. 31, "R&R") dated October 12, 2023, recommending that this Court grant that motion. This motion is noticed for December 12, 2023 at 2:00 p.m. in Courtroom 1, 4th floor, at the Courthouse at 1301 Clay St., Oakland, CA 94612.[1]

John Doe 1 requests that this Court reject the R&R and deny Castro's motion.

Issue To Be Decided

The issue to be decided is whether Castro met the evidentiary burden required for his motion.

Introduction

The Report and Recommendation sets forth the correct standard: a plaintiff seeking discovery that would disclose an anonymous speaker's identity must present *competent evidence* supporting its case and cannot rely on the allegations of its pleadings. R&R 6-7. But after

---

[1]     Chetsford appears here by counsel, as anonymous defendants not infrequently do in similar circumstances. *E.g.*, *Art of Living Foundation v. Does 1-10*, 2011 U.S. Dist. LEXIS 129836, at *4 (N.D. Cal. Nov. 9, 2011); *Sandoval v. Doe*, 591 F. Supp. 3d 7, 9 (E.D.N.C. 2022). As described herein, the subpoena at issue in this miscellaneous action implicated Chetsford's right to anonymous speech under the First Amendment.  Accordingly, he has standing to object. *Cf.* Mot. 3 (arguing that Wikimedia cannot assert free speech or privacy defenses, but rather that "Defendant Chetsford must assert these defenses in a miscellaneous action").

reciting the standard, the R&R ignores it entirely. It repeatedly relies on the allegations of an

improper and invalid pleading, which not only was not submitted with the motion (or at all) but

*did not even exist* at the time the motion was made. Moreover, even considering it as "evidence,"

it is *incompetent* evidence because it alleges many things without demonstrating how Castro has

personal knowledge of them.

<u>Background</u>

This is a miscellaneous action by J.A. Castro ("Castro") seeking an order compelling

Wikimedia Foundation, Inc. ("Wikimedia") to comply with a subpoena. The motion seeks an

order "to compel [Wikimedia] to respond to the subpoena to produce documents, information, or

objects that was served on we can media foundation Inc. [sic] on June 28, 2023, as part of the

litigation styled *J.A. Castro v. John Doe 1, John Doe 2, John Doe 3 and John Doe 4*, which is

currently pending in the United State District Court for the Northern District of Texas, Case No.

4:23-cv-613-P" (Mot. at 1). Castro did not attach the subpoena in question to his motion.

Castro is a declared and FEC-registered candidate for the Republican nomination for

President of the United States. *See* Doc. 8-17, Appellant's Opening Brief filed July 14, 2023 in

*Castro v. Trump*, Eleventh Circuit Appeal No. 23-12111 at 3-4; R&R at 8 (noting that Castro

appears to admit as such).

A full litany of Castro's litigation efforts would unduly lengthen this memorandum.[2]  Of

---

[2]    *E.g.*, *Castro v. Berg*, 2019 U.S. Dist. LEXIS 34362, at *2 (N.D. Tex. March 5, 2019) (in
lawsuit alleging defamation based on, *inter alia*, statements that Castro was not a lawyer,
"[d]efendants point out that Castro is not actually licensed to practice law, a fact which Castro
does not dispute in his Response."); *Castro v. Gudorf*, 2018 U.S. Dist. LEXIS 164380, at *1
(continued...)

some relevance here, Castro sued the United States because "a criminal investigative agent of the Internal Revenue Service . . . told certain individuals that Castro was the subject of an IRS investigation." *Castro v. United States*, 2023 U.S. Dist. LEXIS 99220, at *1 (N.D. Tex. March 29, 2023), *findings accepted and adopted*, 2023 U.S. Dist. LEXIS 98023 (N.D. Tex. June 6, 2023).  (The Government's motion for summary judgment was granted in this case. Castro has appealed. Fifth Cir. Appeal No. 23-10630.)

In the course of that lawsuit, Castro moved to seal the docket, in which he asserted: "This case involves the unlawful disclosure by an IRS Agent of Plaintiff's alleged tax criminal investigation and grand jury indictment." *Castro v. United States*, N.D. Tex. Civ. No. 4:22-cv-00016, Doc. 18. That motion was denied because Castro alleged only a generalized harm to his professional reputation. *Id.*, Doc. 19.

<u>Procedural History</u>

A.    <u>The Original Complaint</u>

Castro commenced an action in the Northern District of Texas on June 16, 2023 by filing a complaint ("Complaint" or "Compl."). Doc. 8-1. Although labeled a "Verified Complaint," no verification appears in the document. It asserted that Castro brought the action against "the as-yet to-be-identified 'John Does' who published immensely damaging and defamatory statements against Plaintiff through Wikipedia using a paid Administrator named 'Chetsford,'" identified in

---

[2](...continued)
(S.D. Ohio Sept. 25, 2018) (dismissing case for want of prosecution).

the Complaint as John Doe 1. Compl. ¶ 1. Paragraph 6[3] of the original Complaint stated that the

Texas federal court "has diversity jurisdiction over the[] claims under 28 U.S.C. § 1332(a)"

because the matter in controversy exceeds $75,000 and "*depending on the identity of John Does*

. . . the controversy is between individuals that are citizens of different jurisdictions."  Compl.

¶ 6 (emphasis added). Paragraphs 8-9, 10A-11A[4] alleged, "on information and belief," that each

of the four Doe defendants is an individual "who is not a resident of . . . Texas." The civil cover

sheet lists Chetford's "county of residence" as "unknown."

The Complaint alleged that John Does 3 and 4 hired Chetsford to create a Wikipedia page

for Plaintiff for the sole purpose of defaming him.  Compl. ¶ 10B.[5]

B.      The Wikimedia Subpoena And The First Amended Complaint

The clerk of the Texas court issued a subpoena for Wikimedia Foundation, Inc. dated

June 20, 2023 (the "Wikimedia subpoena"). *See* Doc. 8-2. It called for

> [a] list of all internet protocol addresses used by Wikipedia
> Administrator 'Chetsford' to access his Wikipedia account over
> the past 12 months.  Not a list of all logins; just the IP address(es).
> This could be a single IP.  It does not take more than 5 minutes to
> pull and review this data.

The Wikimedia subpoena was apparently served on June 28, 2023 and called for production two

---

[3]      Paragraph 6 is the fourth paragraph of the "Verified Complaint."  Doc. 8-1. There are no
paragraphs numbered "4" or "5."

[4]      The original Complaint has two paragraphs numbered "10," two numbered "11," and two
for each number between 20 and 27 (inclusive).  This memorandum uses "A" (*e.g.*, "10A") to
refer to the first paragraph with a duplicated number and "B" to refer to the second.

[5]      Although Paragraph 10B of the original Complaint states that John Does 3 and 4 hired
Chetsford, the Prayer for Relief on page 6 of the Complaint alleged that it was John Doe 2 who
hired Chetsford.  Compl. at 6 (ad damnum ¶ A).

days later, on June 30. *Id.* Wikimedia served objections on July 12, 2023. Doc. 8-3. After those objections were served, Wikimedia and Castro communicated to determine if a resolution could be reached. Castro said that his "goal is to get Chetsford to agree to testify against the Trump campaign that I know paid him to do this" and "to use this civil action to bankrupt the Trump reelection campaign." Doc. 8-4 at 5. Wikimedia proposed that John Doe 1 provide Castro a (pseudonymized) affidavit representing that John Doe was not paid to edit Castro's Wikipedia page nor was coordinating with the Trump campaign. Doc. 8 at 2 (¶ 6). On July 24, Castro rejected this offer and shifted his theory: "Chetsford being paid by a third-party would be shrugged off by me as mere business; not personal.  However, his assertion that this was not a business transaction leaves only the conclusion that this is incredibly personal," "mak[ing] the issue of malice that much more extreme." Doc. 8-4 at 2.

Castro commenced this miscellaneous action on July 31, 2023.

On August 14, 2023, Wikimedia and John Doe 1 filed opposition papers in this Court to Castro's motion to enforce the subpoena. Later that day, Castro filed a "First Amended Verified Complaint" ("FAC") in the Northern District of Texas. N.D. Tex. Case No. 4:23-cv-00613-P-BJ ("ND Texas Case"), Doc. 16. Shortly thereafter, he filed a "Second Amended Verified Complaint" ("SAC") in that court. ND Texas Case, Doc. 17. Castro neither sought nor obtained leave from the Texas court to file the SAC and, accordingly, the FAC is, for now, the relevant pleading there. Fed. R. Civ. P. 15(a); *Meza v. Lowe's Home Ctrs., LLC*, 2015 U.S. Dist. LEXIS 124634, *8 (N.D. Cal. Sept. 16, 2015) (because "Plaintiff did not seek leave of court or obtain Defendant's consent under Rule 15(a)(2), Plaintiff's 'amended complaint is a nullity and is struck.'") (quoting *Calderon v. Lowe's Home Centers, LLC*, 2015 U.S. Dist. LEXIS 82278 at *7

(C.D. Cal. June 24, 2015)).

The caption in the FAC names four anonymous defendants, John Does 1-4, as does the opening paragraph. FAC at 1, 4. The body of the complaint, however, also refers to Donald J. Trump ("Trump"), and an entity (Save America PAC) that the FAC claims is controlled by Trump, as "defendants." FAC ¶ 8. *But see* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). Despite their being named in the caption, no allegations at all are made with respect to John Does 3 and 4. The FAC also refers to two other entities allegedly controlled by Trump, the Patriot Legal Defense Fund and Make America Great Again, Inc. (FAC ¶¶ 9-10) that are not identified in the caption *or* the body of the FAC as defendants, but which Trump and John Doe 2 allegedly used (along with the Save America PAC) to pay John Doe 1 "to create a Wikipedia page for Plaintiff for the sole purpose of defaming Plaintiff and damaging his reputation." FAC ¶ 12.

The allegations of subject matter jurisdiction were modified in the FAC from the original complaint. Paragraph 4 of the FAC states that the Texas federal court "has diversity jurisdiction over the[] claims under 28 U.S.C. § 1332(a)" because the matter in controversy exceeds $75,000 and "the controversy is between individuals that are citizens of different states." Paragraph 6 states that John Doe 1 "is an individual who is not a resident of the state of Texas. This has been confirmed based on an exhaustive investigation that concluded his interests, historical edits, and areas of focus are conclusively not that of a Texan." Paragraph 7 alleges that John Doe 2 "is an individual who is not a resident of the state of Texas." Paragraphs 8-10 make similar allegations of residence for the three entities. No specific allegation is made concerning Trump's citizenship or residency, but Paragraph 11 alleges that "[n]o [d]efendant" is a resident of Texas. As noted,

the FAC says nothing about John Does 3 and 4.

The FAC alleges that John Doe 2 is a competitor of Castro, *i.e.*, a tax attorney. FAC ¶ 16. Accordingly, it alleges that John Doe 2 purportedly has an economic motivation for defaming Castro. *Id.* ¶ 17. The FAC further alleges that he "fabricated a document purportedly from the State of Florida" (FAC ¶ 14), which said fabrication is likely a violation of criminal law, but the FAC does not explain how this allegation relates to the defamation claim. *See* R&R at 7 n.3 ("it is unclear how this relates to Castro's defamation claim"). Nor does it explain why John Doe 2 used Trump-controlled entities to pay John Doe 1 to write the allegedly defamatory Wikipedia article.

According to the FAC, Castro holds himself out as an International Tax Attorney and further alleges that he holds two law degrees, including a Masters of Law (LL.M. ) in Taxation from Georgetown Law. FAC ¶ 15.[6]

The purportedly defamatory statements are set forth in Paragraph 13 of the FAC:

> The false information included, but was not limited to, statements that Plaintiff was under federal indictment, which is verifiably false, that Plaintiff was a 'sleazy' tax attorney, and that Plaintiff never served in the United States military, which is verifiably false since Plaintiff has a DD-214 with an Honorable Discharge from the United States Army and is legally classified as a Veteran despite the fact that Plaintiff does not identify as a veteran since his wartime service was while attending the United States Military Academy Preparatory School, which is now located at West Point.

The FAC also asserts that defendants published false and defamatory statements

---

[6]     Because Castro graduated from law school, he is not entitled to the special latitude traditionally afforded *pro se* litigants.  *E.g.*, *Tan v. Doe*, 2014 U.S. Dist LEXIS 61972, at *2 n.1 (S.D.N.Y. May 1, 2014).  *See also* Doc. 8-16 at 4 (Appellant's Opening Brief filed July 14, 2023 in *Castro v. Trump*, Eleventh Circuit Appeal No. 23-12111 at i) (Castro representing that he is "skilled in the art of respectful and intellectual oratory argumentation.").

repeatedly over a substantial period of time and acted with actual malice and malicious bad faith. FAC ¶¶ 19, 21, 29. The FAC further claims that he is not "a public figure or person who has drawn substantial public attention due to notoriety," and that he "has only received minimal public attention from a few obscure media outlets." FAC ¶ 25. *But see* Doc. 11 at 1 (Castro's opening words on his reply memorandum are "Plaintiff John Anthony Castro is a public figure . . ."); R&R 8.

The FAC alleges that Castro is entitled to "not less than $180,000,000.00 for (1) lost profits; (2) lost enterprise value, and (3) punitive damages." FAC 7 (ad damnum ¶ C).

Castro has not filed any return of service for any defendant in the Texas case.

On October 18, 2023, Castro filed a Third Amended Verified Complaint (ND Texas Case, Doc. 28, "TAC"). The Texas court issued an order "striking and unfiling" that document. ND Texas Case, Doc. 29. On October 19, 2023, Castro moved to amend his complaint and attached to his motion a proposed amended complaint ("PAC") that he variously called a "Third Amended Verified Complaint"(ND Texas Case, Doc. 30-1 at 2) or a "Second Amended Verified Complaint" (*id.* at 5). In the stricken TAC, Castro alleged that John Doe 1 was a resident of the State of Washington and John Doe 2 was a resident of Arizona. TAC ¶¶ 5-6. In the PAC, John Doe 2 – who in previous verified complaints, was an "economic competitor" of Castro who acted with Trump to pay John Doe 1 to defame him through the Trump entities, and who fabricated a document purportedly from Florida (*e.g.*, FAC ¶¶ 12, 14, 16) – is dropped. Instead, it is now John Doe 1 who allegedly fabricated the Florida document. PAC ¶ 13. Nonetheless, the PAC claims that John Doe 1 is a "nominal defendant" and does not seek any damages against John Doe 1. PAC 6 (¶ 6), 10-11 (ad damnum).

C.     The Two Reports And Recommendations

After this Court was assigned this matter on September 6, 2023 (Doc. 21), this Court referred Castro's motion to Magistrate Judge Hixson for a Report and Recommendation. Doc. 22. (This Court asked for an R&R because any order resolving Castro's motion would be "dispositive" of this miscellaneous case.)

Magistrate Judge Hixson issued a first Report and Recommendation with respect to Castro's motion to compel on September 25, 2023, recommending that Castro's motion be denied because he had not received permission to conduct early discovery, but without prejudice to Castro seeking leave for such discovery. Doc. 25. Shortly thereafter, Castro moved for early discovery in Texas, and the court there issued an order granting that motion the next day. ND Texas Case, Docs. 20, 21. (John Doe 1subsequently moved for reconsideration of that order. ND Texas Case, Doc. 23. That motion remains pending in the Texas court.)

The Magistrate Judge then vacated the first Report and Recommendation. Doc. 27. Castro then moved for "relief" from that order "vacating" the report. Doc. 28. He then moved for an order seeking an early hearing on that motion to vacate. Doc. 30.

On October 12, Magistrate Judge Hixson issued the second R&R. After describing the background to the case and the legal standard applicable, the R&R concluded that the "Castro has properly alleged a claim for defamation per se." R&R 7. He based that conclusion on the fact that Castro "alleges Defendants published false statements – that he was under federal indictment and that he never served in the United State military." *Id.* The R&R states that it was "unclear whether the other two statements alleged in Castro's complaint constitute defamation under Texas law," one (that Castro is a sleazy lawyer) because it "cannot be verifiably true or

false because it lacks precise meaning," and the other (that John Doe 2 fabricated a document) because "his complaint does not allege any statement connected with it." *Id.* 7 n.3.

As to the needed requirement of actual malice, the R&R found it sufficient that "Castro alleges Defendants 'published false and defamatory statements not once, but repeatedly over a substantial period of time,' that they 'knowingly and intentionally relied on and used unreliable sources to perpetuate the defamatory statements about [him],' . . . 'acted with actual malice in publishing the knowingly false information,'" and "'entertained serious doubts about the truthfulness of the statement but published them anyways.'" R&R 9 (quoting SAC ¶¶ 18-21). The R&R then concluded that Castro's need for discovery outweighed John Doe 1's First Amendment rights because the discovery he seeks is "critical to the success of his proposed defamation claim." R&R 10. Any harm to Wikimedia, it concluded, could be "minimized through use of a protective order" (*id.*) that would limit Castro's use of the information.

<u>Argument</u>

The R&R was wrong. This Court should conduct a *de novo* review and deny Castro's motion. First, the Wikimedia subpoena was premature, the Texas federal court not having authorized any discovery prior to it being served.  Second, the R&R relied entirely on allegations in a pleading that was filed in Texas submitted after John Doe 1 and Wikimedia submitted their opposition papers. It identified no competent evidence at all, despite the fact that it recognized that relying on allegations would be insufficient. R&R 6.

I.      THE WIKIMEDIA SUBPOENA WAS PREMATURE

As relevant here, Fed. R. Civ. P. 26(d)(1) states that "a party may not seek discovery *from any source* before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order" (emphasis added). Seeking information from Wikimedia is a form of discovery. Doc. 25 at 2-3.

The Wikimedia subpoena was served on Wikimedia on June 28, 2023. The magistrate judge here correctly concluded that it could not be enforced in the absence of an order from the Texas court (Doc. 25), but mistakenly concluded that a *subsequent* order somehow validated the subpoena *nunc pro tunc*. R&R 4 n.1. The R&R offers no justification for this implicit holding. Nothing in the electronic order from the Texas court suggests that it applied *nunc pro tunc*.

Rule 26(d) specifically identifies when early discovery may be served and when it is validated by subsequent events. Fed. R. Civ. P. 26(d)(2) provides that Rule 34 requests may be made prior to the conference required by Rule 26(f), and that those requests are "considered to have been served at the first Rule 26(f) conference." By application of the interpretive tool *expressio unius*, this is the *only* form of discovery that can be validated *nunc pro tunc* by subsequent events. Castro could serve a different subpoena after the Texas court issued its order permitting early discovery, but he could not enforce one that was invalid when it was served.[7]

_____

[7]      After the Magistrate Judge issued an order requesting further briefing on the question of early discovery, Doc. 23, Castro made two arguments (Doc. 24) which the first report and recommendation properly rejected. Doc. 25. First, he argued that *this* miscellaneous case is exempt from initial disclosures, and thus exempt from the requirements of Rule 26(d)(1) by its terms. But, as the Magistrate Judge pointed out, whether *this* case is exempt from Rule 26(d)(1) is irrelevant; Castro is seeking discovery with respect to the Texas case. Second, Castro argued that subpoenas were not in Title V of the Federal Rules of Civil Procedure (Rules 26-37) and thus were not part of discovery. Rule 34(c), which plainly is in Title V, specifically states that
(continued...)

II.     CASTRO WAS OBLIGATED TO PROVIDE COMPETENT EVIDENCE TO
        SUPPORT HIS MOTION TO COMPEL

Anonymous speech is protected by the First Amendment. *In re DMCA § 512(H)*

*Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) ("'[A]n author's decision

to remain anonymous, like other decisions concerning omissions or additions to the contents of a

publication, is an aspect of the freedom of speech protected by the First Amendment.'") (quoting

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 342 (1995)).  *See also Kechara House*,

2015 U.S. Dist. LEXIS 126124, at *6-7 (N.D. Cal. Sept. 18, 2015). Accordingly, when a claim is

based upon speech similar to the speech at issue here, courts in this jurisdiction have identified a

test, derived from *Highfields Capital Management v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005),

for assessing the propriety of discovery that would disclose the identity of an anonymous

speaker. As relevant here, the test has two basic parts. First, the movant must submit evidence

demonstrating a prima facie case – in this case a prima facie case of defamation under Texas

law. Under this part of the test, plaintiff must produce competent evidence to support the claim.

*Kechara House*, 2015 U.S. Dist. LEXIS 126124 at *8-9 ("Under the *Highfields* standard, a

plaintiff must adduce *competent evidence* – and the evidence plaintiff adduces must address *all*

of the inferences of fact that plaintiff would need to prove in order to prevail under at least one

of the causes of action plaintiff asserts") (internal quotation marks omitted).  Second, the Court

must balance the interests of the movant with the First Amendment interests of the defendant.

*Id.* at *9; *In re DMCA Subpoena*, 608 F. Supp. 3d at 876 ("when adjudicating a subpoena . . . a

---

[7](...continued)
"As provided in Rule 45, a nonparty may be compelled to produce documents and tangible
things . . ." That is exactly what the Wikimedia subpoena seeks to do.

court should . . . require the party seeking disclosure to make a prima facie showing on the

merits of their claim [and] balance the equities, weighing the potential harm to the party seeking

disclosure against the speaker's interest in anonymity, in light of the strength of the underlying

claim.").

III.   CASTRO FAILED TO DEMONSTRATE SUBJECT MATTER JURISDICTION WITH
       COMPETENT EVIDENCE AND THE R&R ERRED IN REFUSING TO
       ADDRESS THAT ISSUE

        While the R&R recognizes that John Doe 1 has challenged whether Castro has filed a

proper diversity suit in federal court, it refused to assess this question at all because it considered

it more appropriately handled by the Texas court. R&R 4 n.2. This was incorrect, and the R&R

cites no relevant authority for it.

        A.      Castro Did Not Demonstrate Subject Matter Jurisdiction

        Subject matter jurisdiction is an essential part of any claim in federal court. *Empire*

*Kosher Poultry Inc. v. United Food & Commer. Workers Health & Welfare Fund of*

*Northeastern Pa.*, 285 F. Supp. 2d 573, 578 (M.D. Pa. 2003) ("subject matter jurisdiction is a

prerequisite to finding a valid cause of action"). One cannot conclude that Castro even has

alleged (much less provided the required *prima facie* case with competent evidence for) a valid

claim for relief for defamation unless he has demonstrated facts showing that the Texas court has

jurisdiction. He has not done so.

        Because an essential part of any suit in federal court is subject matter jurisdiction, a party

seeking disclosure of information relating to an anonymous defendant's identity must

demonstrate with competent evidence that the federal court has subject matter jurisdiction.  *E.g.*,

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 132 (D.D.C. 2009) (denying motion to compel

information related to identifying defendants in case alleging defamation and reckless misrepresentation because plaintiff must make a prima facie case, and "it is obvious that . . . the Court has no subject matter jurisdiction" because "the citizenship of the defendants – all anonymous 'Does' – is not known."). Moreover, a plaintiff cannot make allegations of citizenship for which he has no factual basis, and then ask the Court for discovery in the hopes of developing that factual basis. *Id.*

Castro's FAC alleges diversity jurisdiction based on allegations that the defendants are not Texas residents. But his allegations relating to the anonymous defendants are not supported by adequate factual allegations. He alleges John Doe 1's residency based upon a purported investigation of John Doe 1's "interests, historical edits, and areas of focus," but the FAC does not explain how those things could identify anyone's residency. Indeed, the FAC's only allegation of these things is that John Doe 1 wrote a Wikipedia article about Castro – a Texas resident. Moreover, the FAC's allegation of residency for John Doe 2 is just conclusory, and the allegations with respect to John Does 3 and 4 are nonexistent.

Like any allegations in a federal complaint, allegations of citizenship must be plausible, and the allegations in the FAC fail that standard. *E.g.*, *Stephens v. Halliburton Co.*, 2003 U.S. Dist LEXIS 15739, at *18 (N.D. Tex. Sept. 5, 2003) (holding that court lacks subject matter jurisdiction and that allegation "on information and belief" that the "John Doe defendants are not domiciled in any state as any Plaintiff . . . are simply insufficient to establish diversity of citizenship.  This is nothing more than an attempt to establish diversity jurisdiction by default . . ."). Almost by definition, an allegation of citizenship for an anonymous defendant is likely to be implausible.  *Cf. Blossoms & Blooms, Inc. v. Doe*, 2022 U.S. Dist. LEXIS 136226, at *4 n.1

(E.D. Pa. July 29, 2022) ("The Court finds it curious that Plaintiffs appear to have sufficient information to allege [defendant] lives outside of the Commonwealth of Pennsylvania but claim they are unable to determine [defendant's] true identity.").

Accordingly, with exceptions inapplicable here, John Doe defendants are not permitted in federal diversity suits. *E.g.*, *Sinclair*, 596 F. Supp. 2d at 132-33 (holding that the Court lacked subject matter jurisdiction in case alleging defamation and reckless misrepresentation against three anonymous defendants and rejecting plaintiff's argument that discovery will establish that defendants are citizens of other states; "The law is clear . . . that a diversity action cannot be brought against Doe defendants in hopes of later discovering that the requisite diversity of citizenship actually exists."); *Sandoval*, 591 F. Supp. 3d at 11 (quoting *Sinclair*); *Vogel v. Go Daddy Group, Inc.*, 266 F. Supp. 3d 234, 238 (D.D.C. 2017) ("A suit invoking a federal court's diversity jurisdiction cannot be brought solely against Doe defendants because their place of citizenship is not known"); *Kilgore v. Providence Place Mall*, 2016 U.S. Dist LEXIS 71315, at *6 (D.R.I. April 1, 2016) (rejecting diversity jurisdiction where defendant is unknown).

Even if a plaintiff could plausibly allege the citizenship of anonymous defendants, the FAC here still fails. First, it only asserts that Castro's "place of residency" is in Texas and defendants are not "residents" of Texas (FAC ¶¶ 5-11); subject matter jurisdiction under Section 1332 requires diverse *citizenship*, not residency. *E.g.*, *Preston v. Tenet Healthsystem Mem. Med. Ctr.,* 485 F.3d 793, 799 (5th Cir. 2007) and cases cited therein. Citizenship for diversity purposes is determined by domicile, not residency. *Id. See also, e.g.*, *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (rejecting subject matter jurisdiction where both complaint and notice of removal only alleged that plaintiffs were "residents" of California; "[t]he natural

person's state citizenship is then determined by her state of domicile, not her state of residence."); *Subaru of America, Inc. v. HTMC, LLC*, 2018 U.S. Dist. LEXIS 224023, at *9 (C.D. Cal. Nov. 9, 2018) (finding allegations on "information and belief" that Doe defendants resided in southern California insufficient to allege properly subject matter jurisdiction; "But diversity requires citizenship in different states, not just residence, and the two terms are not legal equivalents.").

Finally, although 28 U.S.C. § 1441 permits courts to ignore the citizenship of John Doe defendants when identified defendants remove cases to federal court, the same rule does not apply when plaintiffs invoke federal jurisdiction under Section 1332. *E.g.*, *Stephens*, 2003 U.S. Dist LEXIS 15739, at *21-22; *Meng v. Schwartz*, 305 F. Supp. 2d 49, 55-56 (D.D.C. 2004); *Sandoval*, 591 F. Supp. 3d at 10 (noting that the exception to the rule that John Doe defendants are not permitted in federal diversity suits only applies in removal cases).

B.      The R&R Wrongly Refused To Consider Castro's Failure

The R&R ignores all of this because it concludes that the question of subject matter jurisdiction is best left to the Texas court. The one case it cites, though, *Bogard Construction, Inc. v. Oil Price Info. Serv., LLC*, 2022 U.S. Dist. LEXIS 74726 (D. Md. Apr. 25, 2022) involved a motion pursuant to Rule 45(f) to transfer a motion to compel compliance, made by the subject of the subpoena. Because that rule specifically requires transfer "if the person subject to the subpoena consents," Fed. R. Civ. P. 45(f), the court granted the motion. *Bogard Construction*, 2022 U.S. Dist. LEXIS 74726 at *6 ("This alone ends the matter.").[8] In the alternative, the court

---

[8]      In contrast, here the Magistrate Judge Hixson, prior to the assignment of this case to Judge Rogers, suggested that transfer of Castro's motion to compel might be appropriate and
(continued...)

said in *dicta* that it would find "extraordinary circumstances" for several reasons, one of which was the subpoenaed party's contention that the issuing court lacked subject matter jurisdiction. *Id.* at *8. (The other cases mentioned in footnote 2 of the R&R are irrelevant; they were cases in which judges themselves were defendants in lawsuits.)

But to say that a court may take into account whether the issues are important in determining whether to *transfer* a motion to compel is hardly the same as saying that the court may simply ignore important issues in *deciding* a motion to compel. A court may transfer a motion and decide *nothing* substantive; but it cannot keep the case and select which issues to decide. The very gist of the standard in this Court for determining the motion requires that a Court determine whether the plaintiff has a reasonably good case, an issue which is surely at the heart of the case in the home district. Subject matter jurisdiction is just another part of whether the plaintiff has a good case.

Judge Illston's decision in *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010) is on point here. The underlying lawsuit in that case was a Securities Exchange Act case in the Eastern District of Pennsylvania, which also alleged Pennsylvania common law defamation. *Id.* at 904. The anonymous defendant had submitted "unflattering messages" to the plaintiff's message board, and the plaintiff sought to subpoena Yahoo! for the defendant's IP address. *Id.* The court held that the plaintiff had neither pled nor adduced competent evidence to support its Securities Exchange Act claim because it had not alleged facts that defendant had ever owned or sold the plaintiff's stock or that the defendant's statement distorted the market

---

[8](...continued)
asked for the parties' views. Doc. 10. Wikimedia (as well as Castro and John Doe 1) all objected to the transfer of the motion, and no order of transfer issued.

price for plaintiff's stock. *Id.* at 907. The court recognized that although "*the question of federal jurisdiction will be decided by the Eastern District of Pennsylvania*, the apparent deficiency of the [securities] claim, which is the sole basis for federal jurisdiction in this case" was sufficient to deny the plaintiff discovery. *Id.* at 908 (emphasis added).

*USA Technologies* demonstrates that the court needs to address any issue that will affect the plaintiff's ability to state a claim. Here, the court's subject matter jurisdiction is one of the prerequisites for such a claim, and Castro must adduce evidence in support of that jurisdiction to succeed on his motion. In some cases, the question of subject matter jurisdiction will be connected to the underlying cause of action, but in all cases it is a part of the plaintiff's claim for relief. Moreover, the *USA Technologies* court understood that determining whether the plaintiff has made a prima facie case with competent evidence *at a given point in time* does not preclude the home court from separately addressing any issue on a motion to dismiss or a summary judgment motion at the appropriate time in that litigation. Finally, even if it were appropriate to defer to the Texas court completely on the question of subject matter jurisdiction, it cannot be appropriate to enforce a subpoena *before* that court addresses the issue.

IV.   **THE R&R ERRED BECAUSE CASTRO DID NOT SUPPORT HIS MOTION WITH COMPETENT EVIDENCE DEMONSTRATING A PRIMA FACIE CASE OF DEFAMATION**

The R&R correctly identified the proper standard for this motion: "[P]laintiff's showing must be sufficient to 'survive a hypothetical motion for summary judgment.'" R&R 7 (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-76 (9th Cir. 2011)). The R&R failed to hold Castro to that standard and erroneously assessed Castro's claim for defamation.

A.      Castro Failed To Support His Claims With Competent Evidence And The R&R
        Did Not Address That Failure

Castro's initial motion submitted no evidence at all. *Cf.* Civil L.R. 7-5. But a summary

judgment opposition must oppose with competent facts and cannot rely on the allegations of the

complaint. For this reason alone, Castro's motion should be denied.

Then, *after* Wikimedia and John Doe 1 submitted oppositions, Castro submitted a reply

with a verification that purportedly swore to the truth of all the "factual allegations" in that

document. Doc. 11. The R&R did *not* rely on this; but it did rely on the SAC, which *also* was

filed in the Texas court *after* Wikimedia and John Doe 1 submitted their oppositions to this

motion.[9] Assuming arguendo that this was "evidence," such late submission of evidence is

impermissible on summary judgment and should be impermissible here. *Provenz v. Miller*, 102

F.3d 1478, 1483 (9th Cir. 1996) ("defendants in this case may [not] submit 'new' evidence in

their reply without affording plaintiffs an opportunity to respond. Such a result would be

unfair."); *Sweet v. Cardona*, 2023 U.S. Dist. LEXIS 31518, *32 (N.D. Cal. Feb. 24, 2023)

("Generally, a district court declines to consider information and arguments presented for the

first time in a reply.").

But even assuming these late documents were properly considered as "evidence," and

that Castro "filed" the SAC with his reply, they plainly were not *competent* evidence. Evidence

in the form of testimony must be based on personal knowledge. Fed. R. Evid. 602 ("A witness

---

[9]      There is some irony in the R&R ignoring whether Castro has submitted evidence
showing that the Texas court had subject matter jurisdiction, because it thought it appropriate to
allow that court to resolve the issue itself, and, at the same time, relying on a pleading that was
submitted in that court without the necessary court order and in violation of the rules. Fed. R.
Civ. P. 15(a)(2).

may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."); *cf.* Fed. R. Civ. P. 56(c)(4).

Nothing in the SAC or Castro's reply sets forth anything about how Castro has personal knowledge of any of the facts that he alleges, nor does the R&R identify any such basis for Castro's allegations. *In re Rule 45 Subpoenas Issued to Google LLC & Linkedin Corp. dated July 23, 2020*, 337 F.R.D. 639, 650 (N.D. Cal. 2020) (granting motion to quash a subpoena where the issuing party relied on a declaration which "does little more than repeat the allegations of the complaint in the underlying action."). Indeed, the R&R is quite candid in repeatedly asserting that Castro *alleges* various things. *See, e.g.*, R&R 8-9. With respect to some facts – *e.g.*, what John Doe 1 allegedly wrote for Wikipedia and that he stated certain things "repeatedly" – it should have been simple for Castro to simply point to the URLs (or just attach the alleged writings) to demonstrate these underlying facts. Remarkably, though, he does not and the R&R similarly fails to demonstrate how Castro has personal knowledge of these facts.

This flaw is even more conspicuous with respect to various allegations about what defendants knew, that they acted with actual malice, that they used unreliable sources, and that they entertained serious doubts about the statements they were making. Nothing is stated anywhere (including the R&R) which demonstrates how Castro has personal knowledge of these allegations or identifies other competent evidence to support them.

B.      The R&R Erroneously Concluded That The Statements Were Defamatory

The R&R also errs in asserting that Castro has alleged a proper claim for defamation. A statement that someone did not serve in the military does not expose that person to public hatred,

contempt or ridicule or impeach his honesty, integrity, virtue, or reputation. Tex. Civ. Prac. & Rem. § 73.001; *Williams v. Anti-Defamation League of B'nai B'rith*, 185 F.2d 1005, 1007 (D.C. Cir. 1950) (affirming judgment dismissing libel claim; "A record of military service is, of course, an honor and a credit, but it is no libel to say a man lacks it.  Many worthy citizens are without military honors."). The R&R points out that *Williams* case also said that asserting that a man falsely claimed military rank is defamatory, but that proposition is hardly surprising. Accusing anyone of telling a lie may be defamatory. But Castro has never alleged that John Doe 1 said Castro told a lie. The R&R tries to transform the "Castro was not in the military" statement to a claim that "Castro falsely claimed military rank" (*i.e.*, Castro told a lie), but the FAC does not allege that the statement on Wikipedia that Castro was not in the military contradicted some *prior* statement by Castro. The R&R relied on the fact that Castro stated *in the SAC* that he was in the military (R&R 7), but that came long after the alleged statement on Wikipedia that Castro was not in the military.[10]

The R&R also questioned whether *Williams* was correctly decided. R&R 8. It cited a case from Alabama, *Hoover v. Tuttle*, 611 So. 2d 290 (Ala. 1992), for the uncontroversial proposition that "statements regarding military service can[] be defamatory." R&R 8. In *Hoover*, the defendants said that the plaintiff had received a dishonorable discharge from the service and was involved with another service member who had been under congressional investigation for

---

[10]     Under the R&R's theory, *every* untrue statement could *automatically* be defamatory because it could be contradicted by the plaintiff's complaint in the future. Thus, a statement that "Joe did not wear a red shirt on Tuesday" would become defamatory if Joe *subsequently* filed a complaint alleging that he did wear a red shirt on Tuesday because, under the R&R's theory, the defendant's initial statement is equivalent to saying that "Joe falsely claimed that he wore a red shirt on Tuesday," *i.e.*, that Joe had told a lie.

stealing millions of dollars. *Hoover*, 611 So. 2d at 292. No one even *argued* that these statements were not defamatory; the issue in *Hoover* was the capacity in which the defendants were acting when they made those statements. John Doe 1 submits that these statements are a far cry from a statement that Castro did not serve in the military, and that *Williams* correctly held that merely stating that someone had not served in the military does not go to their character. This seems particularly true given Castro's statements that he resigned from a military academy after the "unlawful invasion of Iraq" and does not identify as a veteran. FAC ¶ 13; Doc. 11 at 3.

Moreover, Castro has pleaded defamation per se. The R&R does not state how the statement about Castro not being in the military has any negative effect on Castro's career as an International Tax Lawyer or is any other way defamatory per se. *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017) ("While a defamatory statement is one that tends to injure a person's reputation, such a statement is defamatory per se if it injures a person in her office, profession, or occupation.").

As to the statement that Castro was under federal indictment, even if it had been made (which it was not), it was substantially true. Under Texas law, "[a] statement is substantially true if it is no more damaging to the plaintiff's reputation than a truthful statement would have been." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 640 (Tex. 1980) (cleaned up). Here, Castro himself stated that an IRS agent had disclosed a grand jury indictment.

V.    THE R&R ERRED BECAUSE THE BALANCE WEIGHS IN CHETSFORD'S FAVOR

Finally, the R&R erroneously concluded that the second part of the *Highfields Capital* test favored Castro.

"[T]he disclosure of [John Doe 1's] identity is itself an irreparable harm." *Art of Living*

*Foundation v. Does 1-10*, 2011 U.S. Dist. LEXIS 129836, at *26 (N.D. Cal. Nov. 9, 2011). Anonymity may permit writers to communicate more openly or garner a larger audience. *Id.* at *27. Disclosure of identity might invite ostracism for expressing unpopular ideas. *Id.*

In comparison, Castro is a candidate for President of the United States and, accordingly, should be familiar with accusations of impropriety from opponents and the public. He has a large platform to rebut those allegations. He does not identify as a veteran (FAC ¶ 13), so it is hard to see how the alleged defamatory statement about his military service could have harmed him much even if, contrary to law, it was defamatory. He already has stated in publicly-filed court documents that an IRS agent disclosed that he was under a grand jury indictment.

In performing the balancing required by the second part of the test, a court should consider the context in which the allegedly defamatory statement was made. *E.g.*, *Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 986 (N.D. Cal. 2015) (holding that, although the court does not "discount the impropriety" of the statement that a company's CEO evaded taxes, it "seems to have been a one-time piece of snideness" and that, in context, "the court is more concerned that breaching the defendant's anonymity for this single remark would unduly chill speech."). Here, Castro has submitted no evidence to show exactly what statements were made. But a view of the current Wikipedia article on him discloses that none of the allegedly defamatory statements alleged in the Complaint are there. https://en.wikipedia.org/wiki/John_Anthony_Castro. *See In re DMCA Subpoena*, 608 F. Supp. 3d at 882 (holding that the balancing prong weighed against enforcing a DMCA subpoena to Twitter because, *inter alia*, "[i]njunctive relief is unavailable, as Twitter has already taken the photos down."). *Cf. Doe No. 1 v. Burke*, 91 A.3d 1031, 1045 (D.C. 2014) (anonymous

Wikipedia editor "apparently accepted the correction and did not seek to re-publish the information. This . . . demonstrates a lack of malice.").  At the same time, the current Wikipedia article details Castro's being banned from the job fair at Georgetown Law School, both as a student and an employer, because of misrepresentations on his resume. These are assertions that the FAC never mentions at all, much less attributes to John Doe 1.

The R&R ignores all of these facts. Instead, it "balances" the competing harms by pointing out that (1) the First Amendment does not protect tortious or libelous speech and (2) "Castro's defamation claim almost surely won't make it off the ground without Wikimedia'a help." R&R 10. But these things will be true in every case against anonymous defendants. If they are dispositive, then there is no "balancing" at all; the person seeking to unmask an anonymous speaker will always win.

Moreover, the R&R ignores that there are other, named defendants in the underlying lawsuit. Castro has done nothing to ascertain whether those defendants have relevant information, not even serving them with a summons and complaint. He ought to make at least that effort  before the Court concludes that the claim "won't make it off the ground."

Worse, the R&R never mentions John Doe 1's harm from disclosure. It only refers to *Wikimedia's* interest in preserving anonymity. Wikimedia's interest, though, is not nearly as significant or direct as John Doe 1's interest, whose speech (and the speech of other anonymous authors on Wikipedia and elsewhere) will be chilled by disclosure.

Lastly, Castro has now moved in the Texas court to amend his complaint so that, for all practical purposes, John Doe 1 will no longer be a party to the case. If his motion is successful, then Castro's claim will be dependent not only upon his claim that he was defamed, but his

allegation that Donald Trump was behind it all.

VI.   IN THE ALTERNATIVE, THE WIKIMEDIA SUBPOENA SHOULD BE
       NARROWED AND LIMITED

The foregoing demonstrates that Castro's motion should be denied. Should the Court

disagree, the subpoena should be narrowed and limited.

Although it never mentioned John Doe 1's interests, the R&R opined that Wikimedia's

"interest in preserving anonymity" could be served by a protective order. R&R 10-11. John Doe

1 submits that the subpoena's call for all IP addresses used by him in the past year is grossly

overbroad. Assuming *arguendo* that Castro had met his burden at all, the IP addresses associated

with John Doe 1's edits to the article on Castro is all that Castro should need. Castro does not

explain why he needs the IP addresses for edits that John Doe 1 made to other articles on

Wikipedia, and no obvious reason comes to mind. If John Doe 1 used a friend's or neighbor's

computer to edit an article having nothing to do with Castro, there is no reason why Castro

should have access to that information.

Conclusion

For the foregoing reasons, the motion for de novo determination should be granted and

Castro's motion to compel should be denied.

Respectfully submitted,


*/s/ Michael E., Rosman*
Michael E. Rosman
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave. NW, Suite 625

Washington D.C. 20036
(202) 833-8400
rosman@cir-usa.org

Attorney for John Doe 1 (Chetsford)